State ex rel. Vail, relator, v. Draper, Auditor.

--------•--------

STATE *ex rel.* JAMES H. VAIL, Relator, *v.* DANIEL M. DRAPER, AUDITOR, Respondent.

48  213
80a  223

1. *Mandamus — Right to office not determined by, when directed to State auditor for warrant of salary.*—The right to an office cannot be determined upon an application for *mandamus* directed to the State auditor for a warrant for a salary.

2. *Officer in by right cannot be ousted by action of governor — Party claiming must resort to quo warranto — Payment, how made by State auditor in case of contest.*—After an officer has received his commission, has been inducted into office, and is in by color of title, he cannot be ousted by the action of the governor, as by the appointment of another in his place. The party claiming the office in such case must resort to *quo warranto.* In making payments under such circumstances, the State auditor is bound to take notice that the incumbent is an officer *de facto,* holding by color of right, and, as such, entitled to his salary until ousted upon proper proceedings.

### Petition for Mandamus.

*Ira E. Leonard,* with *Reynolds & Relfe,* for relator.

Relator is in under color of title at least—that is, under the commission issued by Governor McClurg to him, on the 20th day of April, 1869. Even though the commission may have been wrongfully issued to Vail, and Vail may not have been elected, the commission for that reason is not void ; he was and is *de facto* judge (St. Louis County Court v. Sparks, 10 Mo. 118), and could only be ousted by the means and in the manner designated by law.

(Counsel here reviewed and commented upon the cases of State *ex rel.* Jackson v. Auditor, 34 Mo. 375 ; Winston v. Auditor, 35 Mo. 146 ; and State *ex rel.* Jackson v. Auditor, 36 Mo. 70, to show that they did not avail respondent.)

The auditor could not recognize Dinning as an officer without at least a *prima facie* case showing that the latter was properly in office. No such a case was presented.

If respondent has the superior title to the office, let him oust the relator by due process of law, and he is then amply assisted by the courts in recovering back any moneys wrongfully taken by the relator.

*A. J. Baker,* Attorney-General, for respondent, relied on State *ex rel.* Jackson v. Mosely, 34 Mo. 71 ; State *ex rel.* Jackson v. Thompson, 37 Mo. 375.

WAGNER, Judge, delivered the opinion of the court.

The relator asks this court to grant a peremptory *mandamus* to compel the State auditor to issue a warrant in his favor for salary as judge of the Fifteenth Judicial Circuit, for the fiscal quarter ending on the 30th of June, 1871. The action of the auditor in refusing to draw the warrant is based on the fact that the official register in the office of the Secretary of State shows that on the 14th of April, 1871, the governor of this State commissioned Louis F. Dinning to be judge of the said circuit.

The record in the case, as made up by the pleadings, shows

that both Vail and Dinning trace their title to office under and through the general election held in 1868. At that election they were both candidates for the judgeship in the Fifteenth Judicial Circuit. The register of civil officers kept in the office of the Secretary of State shows that on the 20th day of April, 1869, Governor McClurg commissioned James H. Vail (the relator) judge of the Fifteenth Circuit, "it appearing to him that he was duly elected on the 3d day of November, 1868." Under this commission Vail qualified and proceeded to discharge the duties and functions of the office, receiving the salary and emoluments thereof, and has ever since performed the duties of the same.

On the 14th of April, 1871, about two years after the first commission issued to Vail, Governor Brown commissioned Louis F. Dinning judge of the same circuit, "it having been certified by the Hon. Francis Rodman, Secretary of State, that he was duly elected November 3d, 1868." It thus appears that there is a contest in the Fifteenth Circuit as to who is the rightful judge thereof. With that contest we have nothing to do in this proceeding, as the right to an office cannot be determined upon an application for a *mandamus* directed to the auditor for a warrant for a salary. (State *ex rel.* Jackson v. Mosely, 34 Mo. 375; 36 Mo. 70; Winston v. Mosely, 35 Mo. 146.)

No parties are here contesting, and the only question for us to decide is, who is entitled to the salary as the case is now presented? Which of the parties was originally entitled to the commission we do not know, nor are we at liberty to give an opinion. When Governor McClurg, acting upon evidence which he doubtless deemed satisfactory, of Vail's election, issued a commission to him, the executive function, so far as commissioning a judge for that circuit was concerned, was exhausted. The commission invested Vail with the title, and was *prima facie* evidence of his right to the office. It gave him the possession, and he could only be deprived of it or ousted upon due process, in the manner prescribed by law. He exercised its duties and privileges by color of law, and that was sufficient till some other person legally established a better and a higher right.

After the governor had issued his commission, and Vail had

qualified and been inducted into office, it was incompetent for any subsequent governor, upon any evidence whatever, to attempt to nullify or revoke that commission and devolve the office upon another.   It is true that Governor Brown acted upon the certificate of Mr. Rodman, the former Secretary of State, and the evidence of Dinning's right was doubtless to him considered conclusive ; still, after his predecessor had acted in the course of his official duties upon the same subject, we do not think that by any executive action Vail could be ousted or deprived of his *prima facie* right to the office.   Such a proceeding would be the exercise of judicial rather than of executive powers.   If an error was committed in the issuance of the commission to Vail, and Dinning was the party justly and fairly entitled to the office, the courts furnished the proper and appropriate mode for seeking redress. He should have proceeded at once by *quo warranto* and settled his claims.   This remedy the law points out.   To sanction any other course would lead to anarchy and disorder, and we should have the spectacle of two judges holding rival courts, each claiming obedience and authority, and both deriving their power from identically the same source.   Such a state of things ought not to exist.   There can be but one lawful judge, and the law has made ample provision to ascertain and determine who he shall be.

In the case of St. Louis County Court v. Sparks, 10 Mo. 117, it appears that Sparks was appointed collector of the revenue, and after the expiration of his term, Wise was appointed his successor.   Wise qualified and entered upon the transaction of his official duties.   Sparks was directed to make a settlement with the court, and deliver possession of the office to Wise.   This he refused to do, alleging that Wise was ineligible.   The marshal, by order of the court, forcibly ejected him.   On this state of facts he applied to the Circuit Court for a *mandamus* to compel the County Court to restore him to the office of collector. The only ground on which Sparks claimed the office was that he held till his successor was appointed, and that the appointment of Wise was invalid, he being at the time disqualified.

Judge Scott, in writing the opinion of the court, says :   "It has been long held that a *mandamus* may be issued to restore a

person to an office to which he is entitled. (4 Bacon, 500.) But we are not prepared to say that this was a proper case for the interference of the Circuit Court by *mandamus*. Various considerations incline us to this opinion. The office was already filled by one who was *de facto* an officer at least; and it appears to be the law that when an office is already filled by a person who is in by color of right, a *mandamus* is never issued to admit another person, the proper remedy being an information in the nature of a *quo warranto*. (The People v. The Corporation of New York, Johns. Cas. 79; Ang. & Ames on Corp. 565; King v. Mayor of Colchester, 2 Durn & East, 259.) It would not be just that Wise's right to the office should be determined on a proceeding to which he was no party. He was the proper person to vindicate his own rights, and a *quo warranto* was the proper mode under the circumstances to try the validity of his appointment."

Now, it is certain that Vail was a *de facto* officer, that he was in by color of right at least, and when the commission was issued to Dinning, Vail was no party to it, and had no opportunity to be heard. We may repeat the language of Judge Scott, and say it would not be just that Vail's right to the office should be determined on a proceeding to which he was no party. He was the proper person to vindicate his own rights, and a *quo warranto* was the proper mode under the circumstances to try the validity of his election and commission.

The auditor was bound to take notice that there was no claim set up to the office by either Vail or Dinning other than was derived under the election of 1868; that Governor McClurg commissioned Vail as having been legally elected at that time, and that Vail qualified, performed the duties of the office, and drew his salary therefor; in other words, that he was *de facto* the judge, holding by color of right, and, as such, entitled to his salary until ousted upon proper proceedings.

This opinion is strictly limited to the case now made, and can have no bearing on any question as to a contest between the parties when their rights are presented for adjudication.

In my opinion a peremptory writ should issue. The other judges concur.