[S. F. No. 1140. In Bank.—October 6, 1897.]

THOMAS MORTON, Petitioner, v. WILLIAM BRODERICK, Auditor, etc., Respondent.

Mandamus—Duty of Auditor to Compute and Enter Tax Levy.—It is the express statutory duty of the auditor to recognize, compute, and enter the tax levy in accordance with the rate fixed by the board of supervisors, and *mandamus* will lie to compel the performance of such duty.

Id.—Title to Office Incidentally Involved—Inadequate Remedy at Law—Tax Levy by Conflicting Boards of Supervisors—Inquiry as to De Facto Board.—The general rule that *mandamus* will not lie to determine the title to an office, applies when there is a plain, speedy, and adequate remedy at law to determine such title; but where the writ is sought to enforce a specific duty enjoined by law, and the remedies at law are inadequate, aid will not be refused merely because the occupancy or incumbency, or title to an office is incidentally involved, and in such case rights will be inquired into and determined so far as and no farther than may be necessary to the granting of the relief sought; and the fact that two distinct tax levies have been made by conflicting boards of supervisors, and that the inquiry upon *mandamus* to the auditor to compel the entry of one of the levies, incidentally involves the determination as to which of the conflicting boards is *de facto* in office, and has the better apparent legal right to make the tax levy, constitutes no objection to the proceeding in *mandamus* against the auditor.

ID. — PROCEEDING TO REMOVE BOARD OF SUPERVISORS — NEGLECT IN FIXING
WATER RATES. — CONSTITUTIONAL QUESTION APPROPRIATE TO APPEAL. —
Where a proceeding was instituted in the superior court to remove
a board of supervisors from office for neglect to fix water rates in
the month of February, the question as to the constitutionality of
the statute under which the proceeding was had is more appropriate
to be determined upon appeal from the judgment removing the
board, than upon *mandamus* to enforce a tax levy made by the *de
facto* board of supervisors.

ID.—NATURE OF PROCEEDING—JUDGMENT OF FORFEITURE—CIVIL ACTION—PAR-
TIES.—Where a proceeding for the removal of a board of supervisors was
in the form of a civil action, brought at the instance and in the
name of a private individual, and the defendants were served with
the summons required in a civil action, and the cause was con-
ducted throughout as would be a civil trial, without a jury, a judg-
ment of forfeiture of office rendered against the board in such ac-
tion must be deemed rendered under civil process as respects the
effect of an appeal therefrom; and the judgment cannot be upheld
as having been rendered in a criminal proceeding, regardless   of
whether the statute contemplates a civil or criminal proceeding, in-
asmuch as a criminal proceeding .could only be conducted in the
name and by the authority of the people of the state and not by a
private person.

ID.—APPEALS IN SPECIAL CASES—CONSTITUTIONAL LAW—JUDICIAL CONSTRUC-
TION OF FORMER CONSTITUTION—RE-ENACTMENT—ACQUIESCENCE.—The for-
mer constitution having been judicially construed to empower the
legislature to provide for appeals to the supreme court in special
civil proceedings of a summary character, its language, re-enacted
in the present constitution, will be concluded to have been adopted
with the interpretation and construction which the courts had enun-
·ciated; and where the construction of the present constitution has
been fixed by long acquiescence and sanction both of the legislature
and of the courts in favor of the right of appeal, in special cases,
it cannot be open for decision to the contrary as a new question.

ID.—JUDGMENT REMOVING BOARD OF SUPERVISORS—EFFECT OF APPEAL—SUS-
PENSION OF JUDGMENT—RESTORATION OF LEGAL RIGHT.—An appeal to the
supreme court from a judgment removing a board of supervisors
for neglect to fix water rates at the required time *ipso facto* operates
as a *supersedeas*, and suspends the effect of the judgment, so as to
restore the board to its right to continue in office until the final
determination of the appeal.

ID.—APPOINTMENT AND QUALIFICATION OF NEW BOARD IMMATERIAL—RIGHT OF
INCUMBENCY OF APPEALING BOARD.—The fact that a new board of super-
visors was appointed, qualified, and met and organized after the
announcement of the decision, and before the entry of judgment re-
moving the board of supervisors, and the taking of an appeal there-
from, is immaterial, and cannot affect the legal right of the appeal-
ing board to retain the incumbency of the office, where it appears
that on the day of the entry of the judgment of removal it imme-
diately perfected an appeal, and continued thereafter to act as a
board of supervisors.

ID.—EFFECT OF CONFLICT OF INCUMBENCY—LEGAL RIGHT DISTINGUISHING OFFI-
CERS DE FACTO.—Where conflicting boards or officers are acting simulta-

eously, each under a claim of right, since there cannot be two *de facto* boards or officers, that one alone will be recognized as the *de facto* board or officer which is acting at the time under the better apparent legal right; and, in such case, the title to the office *de jure* draws to it the possession *de facto*.

Id.—Tax Levy of San Francisco—Signature of Mayor not Required—Constitutional Amendment—Act of 1897 Inapplicable—Municipal Affairs not Subject to General Laws.—The act of 1897 requiring the signature of the mayor to a tax levy does not apply to the city and county of San Francisco, as it deals with municipal affairs which, by the constitutional amendment of 1895, are exempted from the control of general laws in cities and towns not organized under the general scheme embraced in the municipal incorporation act, but which are organized under special charters; and the signature of the mayor of San Francisco is not required in order to the validity of a tax levy made by its board of supervisors.

WRIT of Mandate from the Supreme Court to the Auditor of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Garrett W. McEnerney, E. S. Pillsbury, and John Garber, for Petitioner.

*Mandamus* is the proper remedy in this case. (Code Civ. Proc., sec. 1085; *People v. Olds*, 3 Cal. 167; 58 Am. Dec. 398.) The fact that conflicting claims to office are incidentally involved does not preclude *mandamus* to enforce a public duty enjoined by law, and the court may decide the case upon its merits, according to the present apparent title. (*State v. Mayor*, etc. 52 N. J. L. 332; *Lawrence v. Hanley*, 84 Mich. 399, 403, 404; *Nathan v. Tompkins*, 82 Ala. 437, 446; *Moses v. Tompkins*, 84 Ala. 613, 616, 617; *Johnston v. Jones*, 23 N. J. Eq. 216; *Mechanics' Bank v. Burnet Mfg. Co.*, 32 N. J. Eq. 236, 238, 239; *Kennedy v. Board of Education*, 82 Cal. 483; *Crowell v. Lambert*, 10 Minn. 369; *State v. Johnson*, 35 Fla. 2; *State v. John*, 81 Mo. 13; *State v. Jaynes*, 19 Neb. 161; *Metsker v. Neally*, 41 Kan. 122, 124, 125; 13 Am. St. Rep. 269.) The action to remove the board of supervisors was a special case of a civil nature, of which this court has appellate jurisdiction. (*Parsons v. Tuolumne Co. Water Co.*, 5 Cal. 43; 63 Am. Dec. 76; *Stockton etc. R. R. Co. v. Galgiani*, 49 Cal. 140; *Pacific Undertakers v. Widber*, 113 Cal. 201; *Covarrubias v. Supervisors etc.*, 52 Cal. 622.) The prompt and immediate appeal taken by the defendants in that

action as soon as the judgment was entered, suspended the operation of the judgment, and entitled them to remain in office pending the appeal. (*Covarrubias v. Supervisors, supra; Spears v. County of Modoc,* 101 Cal. 303, 304; *Pierce v. Birkholm,* 110 Cal. 669; *Harris v. Barnhart,* 97 Cal. 550; *Naftzger v. Gregg,* 99 Cal. 83; 37 Am. St. Rep. 23; *Estate of Blythe,* 99 Cal. 472; *Brown v. Campbell,* 100 Cal. 646; 38 Am. St. Rep. 314; *Ruggles v. Superior Court,* 103 Cal. 125; *People v. Treadwell,* 66 Cal. 400; *Born v. Horstmann,* 80 Cal. 452; *In re Schedel,* 69 Cal. 241; *In re Woods,* 94 Cal. 566; *Stateler v. Superior Court,* 107 Cal. 536; *Pennie v. Superior Court,* 89 Cal. 31; *Dennery v. Superior Court,* 84 Cal. 7; *Palache v. Hunt,* 64 Cal. 473; *Havemeyer v. Superior Court,* 84 Cal. 380, 381; 18 Am. St. Rep. 192; *Murray v. Green,* 64 Cal. 363; *Kirsch v. Kirsch,* 113 Cal. 56.) There can be no right of a successor until the determination of the rights of the predecessor in office. (*State v. Williams,* 25 Minn. 340.) Forcible disposesssion counts for nothing. (*State v. Draper,* 48 Mo. 213.) Recognition of the mayor counts for nothing. (*Braidy v. Theritt,* 17 Kan. 468.) Possession was never surrendered by the *de jure* elected board, and the present title to the office *de jure* draws to it the possession *de facto,* where the incumbency is contested. (*State v. Mayor, supra; People v. Scrugham,* 20 Barb. 302, 305; *Hallgren v. Campbell,* 82 Mich. 255, 262; 21 Am. St. Rep. 557; *Metsker v. Neally,* 41 Kan. 122; 13 Am. St. Rep. 269; *State v. John, supra; State v. Jaynes, supra; Lawrence v. Hanley,* 84 Mich. 399, 403, 404.)

Thomas V. Cator, for Intervenor, Joseph Greenberg, and in support of the application for writ of mandate.

The judgment in case of *Fitch v. Supervisors* is void upon its face, and may be collaterally attacked. (*Ex parte Nielsen,* 131 U. S. 176; *Ex parte Cuddy,* 131 U. S. 280; *People v. Liscomb,* 60 N. Y. 559; 19 Am. Rep. 211.) The statute of 1881, under which that proceeding was had is unconstitutional, forfeiture of office not being a penalty within the meaning of article XIV of the constitution. (*Chicago etc. R. R. Co. v. People,* 67 Ill. 11; 16 Am. Rep. 599; *People v. Nedrow,* 122 Ill. 366, 367.) The removal of an entire board, including the innocent with the guilty, is not due process of law. (*Chicago etc. R. R. Co. v. Peo-*

*ple, supra.*)   The statute authorizes only the board to be heard and denies a hearing to its innocent members.   But the right to a hearing is essential to due process of law against any individual or officer.   (*Ex parte Robinson*, 19 Wall. 505, 512.) The statute violates article VI, section 20 of the constitution, in authorizing a prosecution in the name of a private person. The right of a defendant to be prosecuted for a public offense in the name of the people is a constitutional right, and this provision is mandatory and self-executing.   (*Hyatt v. Allen*, 54 Cal. 353; *Ewing v. Mining Co.*, 56 Cal. 649.)

H. T. Cresswell, William T. Baggett, George W. Schell, and E. W. McKinstry, for Respondent.

*Mandamus* cannot be resorted to compel a ministerial officer to accept one of two tax levies presented by contending boards of supervisors, thus compelling him to act in a particular way. (*Flagley v. Hubbard*, 22 Cal. 35; *People v. Weston*, 28 Cal. 640.) The title to office cannot be inquired into upon *mandamus*. (*People v. Olds*, 3 Cal. 167; 58 Am. Dec. 398; *Fish v. Weatherwax*, 2 Johns. Cas. 217; *People v. Stevens*, 5 Hill, 616; *Kelly v. Edwards*, 69 Cal. 460; *State v. John*, 81 Mo. 13; *Leach v. Cassidy*, 23 Ind. 449; *Meredith v. Supervisors*, 50 Cal. 433; *People v. Harvey*, 62 Cal. 508; *People v. Sassovich*, 29 Cal. 480; *Hull v. Superior Court*, 63 Cal. 177; *Satterlee v. San Francisco*, 23 Cal. 314.)   The supreme court has no original jurisdiction of a proceeding to try title to an office.   (*People v. Harvey*, *supra*.) There is no appeal from the judgment in the suit of *Fitch v. Supervisors*.   (Const., art. VI, sec. 4; *Houghton's Appeal*, 42 Cal. 35; *Bixler's Appeal*, 59 Cal. 550; *In re Curtis*, 108 Cal. 661; *Wheeler v. Donnell*, 110 Cal. 655.)   No appeal therefrom could operate as a stay of proceedings.   (Code Civ. Proc., sec. 997.) The judgment of removal was self-executing, and its operation as such could not be destroyed or impaired by appeal.   (*Foster v. Superior Court*, 115 Cal. 279; *Dulin v. Pacific etc. Co.*, 98 Cal. 304; *Walls v. Palmer*, 64 Ind. 493; *Welch v. Cook*, 7 How. Pr. 282; *People v. Conover*, 6 Abb. Pr. 220; *Allen v. Robinson*, 17 Minn. 120; *Fulgham v. Johnson*, 40 Ga. 164; *Ellison v. Raleigh*, 89 N. C. 125; *Utica Ins. Co. v. Scott*, 8 Cow. 721, 722.) In so far as a judgment has been executed, its operation can-

not be stayed by appeal, so as to have any retroactive effect upon the execution of the judgment. (*Gutierrez v. Superior Court*, 106 Cal. 171; *Board etc. v. Gorman*, 19 Wall. 661; *Runyon v. Bennett*, 4 Dana (Ky.) 598; 29 Am. Dec. 431; *Ellison v. Raleigh, supra.*)  The levy of the old board is invalid as it lacks the signature of the mayor.   (Stats. 1897, p. 190; *People v. McCreery*, 34 Cal. 432.)

M. M. Maginnis, *Amicus Curiæ.*

Under section 1 of article XIV of the constitution the board of supervisors is not liable to any " further " or additional processes or penalties, for failure to fix water rates in the month of February; unless it has first been subjected to " peremptory process to compel action at the suit of any party interested," and the removal of the board of supervisors from office in a case where there has been no peremptory process to compel action, is without constitutional authority and void.

HENSHAW, J.—This is an original proceeding in mandate, brought to compel the auditor, as the performance of an official duty, to compute and enter the taxes upon the assessment-roll in conformity with the rates fixed by orders of a body claiming to be the board of supervisors of the city and county of San Francisco, which body for convenience may hereafter be designated the old board.

The auditor made answer. Certain facts were admitted; to others, upon which issue was joined, evidence was addressed.   They will be set forth as may be necessary for the consideration of the legal propositions calling for determination.

1. By respondent it is first insisted that as there are two bodies, each claiming to be and acting as the board of supervisors, before the writ prayed for may issue title to the office must be tried; that *mandamus* will not lie to try title to office, and that therefore the application for the writ must be denied.   The facts bearing upon this matter are the following:  A proceeding was instituted in the superior court based upon the provisions of article XIV, section 1, of the constitution, and upon an act entitled "An act to enable the board of supervisors," etc. (Stats. 1881, p. 54), to remove the old board from office for its failure to fix water

rates in the month of February. A judgment of removal was entered against the board, and against the individual members composing it, upon September 16, 1897, and upon the same day the defendants gave notice of and perfected their appeal.

The governor of the state and the mayor of San Francisco, each deeming that vacancies were created by the judgment, and that in himself was vested the power to fill them, appointed the same twelve men as supervisors, who may be described as constituting the new board. Mixed questions both of fact and law are here presented as to the validity of the appointments, the time of qualification, and the like, which we need not pause to determine. The undisputed facts are that the new board met upon the morning of September 16, 1897, the mayor sitting with it, and then and thereafter contended and contends that it is the *de jure* board of supervisors, and that in any event it is the *de facto* board. A majority of the old board met in pursuance to adjournment upon the afternoon of the same day in the board rooms of the City Hall, and thereafter continued to hold meetings from time to time, and to transact business, the mayor and the clerk, however, refusing to recognize its official existence. Upon the morning of Monday, the twentieth day of September, the old board was in personal possession of the board rooms; the new board was convened to meet at the same place. Upon the refusal of the members of the old board to vacate their seats and the room, they were removed by physical force through the instrumentality of the police, acting under instructions of the mayor. They then convened in an adjoining committee room, and from this in like manner were ejected. Access to the board rooms being thus denied them, their subsequent meetings were held in the corridors of the City Hall, and finally in a room of a neighboring hotel. Both boards framed appropriate orders, and presented their tax rates to the auditor. He accepted neither. Upon his refusal to act, this proceeding was instituted.

It is not disputed that it is the express duty of the auditor to recognize, compute, and enter the tax levy in accordance with the rate fixed by the board of supervisors. (Pol. Code, secs. 3714, 3731, 3732.) It is not questioned but that one or the other of the rates presented is legal, and should be accepted by the auditor

as an act especially enjoined upon him by law. Yet, notwith-
standing that *mandamus* lies to compel the performance of such
an act, and, indeed, that it is usually the only effective proceeding
for the purpose, it is contended that in this case it will not lie,
because title to office is necessarily involved. Since the auditor
could make the same defense to an attempt by the new board to
compel him to recognize its rate, it would then result that per-
formance of this most important official duty could never be
speedily or effectively enforced, or enforced at all. It is the un-
doubted rule that *mandamus* does not lie to try title to office.
But this is founded upon the just and expedient principle that
the writ will never issue when the remedy at law is plain, speedy,
and adequate. An application for a writ of mandate to try title
to office would be answered at once by the suggestion that the
law affords adequate process and procedure by an action of *quo
warranto* or usurpation of office. But when the writ is invoked
to enforce a specific duty, and remedies at law are not adequate,
aid will not be refused merely because occupancy or incumbency
or title is incidentally involved. It will act under such circum-
stances as does equity, and inquire into and determine rights so
far as, but no further than, may be necessary to the granting of
the relief sought. The cases in which the doctrine is invoked
that *mandamus* will not lie to try title to office are those like
*People v. Olds*, 3 Cal. 167, 58 Am. Dec. 398, and *Kelley v. Ed-
wards*, 69 Cal. 460, where, the respondent being admitted or
proved to be at least a *de facto* officer, the express pur-
pose of the action upon the part of the petitioner is to
establish in himself a superior legal right to the office.
And this the courts uniformly hold may not be done in
*mandamus.* For it once being established that the respond-
ent is a *de facto* officer, as the law, for grave reasons of
public policy, holds valid the acts of such an officer, the
question of legal title, which alone is sought to be litigated,
will be relegated to another forum. So in a case such as the pres-
ent, if it be either admitted or established that one or another of
the boards is a *de facto* body, the need of further inquiry comes to
an end, since the official acts of that body are entitled to recog-
nition by the auditor and are valid. In support of this principle

may be cited *Lawrence v. Hanley*, 84 Mich. 399; *State v. Draper*, 48 Mo. 213; *State v. Atlantic City*, 52 N. J. L. 332; *People v. Scrugham*, 20 Barb. 302; *Crowell v. Lambert*, 10 Minn. 369; *State v. Johnson*, 35 Fla. 2; *State v. Jaynes*, 19 Neb. 161; *State v. John*, 81 Mo. 13; *Johnston v. Jones*, 23 N. J. Eq. 216; *Merchants' Nat. Bank v. Burnet Co.*, 32 N. J. Eq. 236; *State v. Williams*, 25 Minn. 340.

So the question of the legal title to the office, as between the contending boards, is not involved in this proceeding, for it is the right of either to act, as contradistinguished from the title which either has to the office, into which this inquiry goes; and even if the law were not so well settled as it is in favor of the power of the court to enter upon such inquiry in *mandamus*, the grave consequences which must follow the present unsettled condition of municipal affairs, the delay, confusion, and injury to private and public interests by reason of the uncertainty, the disaster which would follow a failure to levy and collect taxes, and the high demand of public policy that public officers should be positively known, and the terms and tenures of their offices definitely assured, would be warrant enough to prompt a court to retain this proceeding, when no express law prohibits it.

2. Upon the hearing, argument was advanced to show the unconstitutionality of the act under which these proceedings were had. If these arguments are sound, it would of necessity follow that the judgment of the trial court is not merely voidable upon appeal, but absolutely void. These questions are passed, not as being unimportant, but as being more appropriate for determination upon the appeal from the judgment.

3. Upon the character of the proceeding before the trial court, it was insisted by respondent that it was essentially criminal, and that under a criminal judgment of forfeiture an appeal does not stay the execution of the judgment, nor reinstate the evicted officer. Some countenance is given to this contention by the definition of crime in the Penal Code (sec. 15), and by the language of the act itself, which designates the failure to fix rates as "malfeasance," of which the board is to be "deemed guilty," and provides for a "forfeiture" of office upon "conviction." But the legislature may provide that an act of misfeasance, nonfeasance, or malfeasance—in short, any dereliction in official duty—may

work a forfeiture of office, yet that act need not necessarily be a crime. It may be made a crime punishable by forfeiture under criminal proceeding; but equally it may be made a dereliction working a forfeiture under civil process. Prolonged absence of judicial officers from the state (Const., art. VI, sec. 9), the failure of the sheriff promptly to account for fees collected (Pol. Code, sec. 4186), are acts working forfeiture of office, which may be exacted in a civil trial. In this case the proceedings *ab initio* were civil in form. The action was at the instance and in the name of a private individual, the defendants for process were served with the summons required in a civil action, and throughout the cause was conducted as would be a civil trial without a jury. Finally, respondent's contention that the proceeding is criminal, if upheld, works the utter destruction of his cause. For, if criminal, then indisputably defendants were denied a right reserved to them and to all by the constitution of the state, namely, that all prosecutions shall be conducted in the name and by the authority of the people of the state of California, and not by a private person. (Const., art. XI, sec. 20.) But it is not necessary to decide whether the proceeding was or was not criminal. The matter will be discussed upon the assumption that it was a civil action, since otherwise it cannot be upheld.

4. Treating, then, the judgment in the case of *Fitch v. Board of Supervisors* as a judgment rendered in a special civil proceeding of summary character, it is next insisted by respondent that the constitution has not provided for appeals in such proceedings, that the legislature has not the power to do so, and that the judgment of the trial court is, therefore, an absolute finality. Were this question a new one, much weight would be due respondent's argument upon the matter. But for the following reasons it cannot be opened for decision as *res nova et integra:* 1. Because, under identical language in the earlier constitution of the state (Const. 1849, art. IV, sec. 19; Const. 1879, art. IV, sec. 18), it was held by our predecessors that the constitution itself empowered the legislature to provide for appeals in special proceedings; 2. In re-enacting in the later constitution the language of the earlier, it will be concluded that it was adopted with the interpretation and construction which the courts had enunciated (*Sharon v. Sharon*, 67 Cal. 185; *Lord v. Dunster*, 79 Cal. 477;

*McBean v. Fresno,* 112 Cal. 159; 53 Am. St. Rep. 191); 3. Since
the adoption of the present constitution, this court, in accordance
with that principle and under the authority of sections 52
and 939 of the Code of Civil Procedure, has unquestion-
ingly retained jurisdiction of such appeals in a multitude of
cases of different kinds; and this long acquiescence and sanc-
tion both by the legislature and by the courts fixes the
construction; 4. The precise question was before this court
in Bank in 1889, and it was then held without dissent
that the present constitution was not more restrictive than
the earlier, and that the supreme court had appellate juris-
diction in such cases. (*Lord v. Dunster, supra.*) It is said: "Un-
der these circumstances, and in view of the fact that there is noth-
ing in the language of the constitution of 1879 making the
original jurisdiction of the superior court final or conclusive to
any extent greater than was that of the county court in such cases,
or restricting the right of appeal to this court, we do not feel call-
ed upon to say whether the reasoning of the court in *Knowles v.
Yates* is sound. It is sufficient to say that the conclusion therein
reached has been sanctioned by long acquiescence on the part of
the legislature and the courts. It has been decided that 'a con-
temporaneous exposition, even of the constitution of the United
States, practiced and acquiesced in for a period of years, fixes the
construction.' (1 Kent's Commentaries, 465, note; *Packard v.
Richardson,* 17 Mass. 143; 9 Am. Dec. 123; *Curtis v. Leavitt,*
15 N. Y. 217; *People v. Fitch,* 1 Cal. 523; Civ. Code, sec. 3535.)
When the framers of the constitution employ terms which have
received judicial interpretation, and have been put into practice
under a former constitution so as to receive a definite meaning
and application, it is safe to give them the signification which
has been sanctioned by such interpretation, unless it is apparent
from the language used that a more general or restricted sense
was intended. In determining the meaning of a constitutional
provision, it will be presumed that those who framed and adopted
it were conversant with the interpretation which had been put
upon it under the constitution from which it was copied; and this
is the rule even as to provisions taken from the constitutions of
other states—the judicial construction placed upon them in the

states from which they are taken will be followed by the courts in the state which adopts them."

Lastly, in *In re Marks*, 45 Cal. 199, which was a special proceeding such as this to remove an officer for misconduct, it was held that an appeal would lie. In that case, the act itself provided for an appeal, while now the right of appeal is conferred by sections 52 and 939 of the Code of Civil Procedure.

5. What may be the effect of the appeal in a case such as this is a question fully answered in *Covarrubias v. Supervisors*, 52 Cal. 622. Covarrubias, sheriff of the county, had been removed from office by summary civil procedure. Upon the day of the entry of the judgment he perfected his appeal. The supervisors, believing a vacancy to exist in the office, were about to fill it, when Covarrubias, made application to the supreme court for a writ of prohibition. It was held that he had an appeal from the judgment of the trial court, and that the appeal, when well taken, "*ipso facto* operated a *supersedeas*." Whether, then, the judgment in such a case be considered a self-executing judgment or not, the appeal is equally self-executing and restores the officer to his rights of office until its final determination. Nor could the facts, if they be deemed proved, that the new board was appointed and qualified and met and organized before the judgment was entered and the appeal taken, affect in any way the legal situation. The case is not that of an official who, ofter judgment, retires from his office and leaves it to his appointed successor, who, clothed with its insignia and surrounded by its indicia, acts in an official capacity. Thereafter, if the ousted officer who had thus voluntarily retired should endeavor in *mandamus* to assert a legal title against one who was clearly *de facto*, the court, as has been said, would in such a proceeding go no further than to determine that the office was full *de facto*. But in this case there was never any voluntary surrender or withdrawal upon the part of the old board. It maintained its right to act, and continued to act, as a board of supervisors during all the time. So also, it is true, did the new board; but there cannot be at one and the same time two *de facto* officers, any more than there can be two *de jure* officers. This case is one where two contending boards are simultaneously acting and claiming the right to act. In such

a case, it is sometimes said that the title to the office *de jure* draws to it the possession *de facto.* (*State v. Atlantic City, supra.*) This, however, is but a concise expression of the rule that in *mandamus,* where conflicting boards or officers are acting simultaneously, each under a claim of right, since there cannot be two *de facto* boards or officers, that one alone will be recognized as the *de facto* board or officer which is acting at the time under the better apparent legal right. (*Braidy v. Theritt,* 17 Kan. 468; *Hamlin v. Kassafer,* 15 Or. 456; 3 Am. St. Rep. 176; *State v. Draper, supra; State v. Johnson, supra; Lawrence v. Hanley, supra; State v. Atlantic City, supra.*)

Until the judgment of removal, the old board was the unquestioned *de jure* and *de facto* body. Upon the day of the entry of the judgment an appeal from it was perfected. The members of the old board never abandoned their offices, but always acted and claimed the right to act. Even if it be said that the judgment was self-executing, and that a vacancy existed upon the entry of judgment by operation of law and without process of the court, it must necessarily follow, under the decision in the Covarrubias case, that it existed only until an appeal from the judgment was perfected, and that this appeal restored the incumbent to his rights of office until final determination of the controversy, and that, therefore, the better present, apparent, legal right is with the old board.

6. The final contention of the respondent in the matter is, that the levy of the old board is illegal and invalid because it lacks the signature of the mayor of the city and county of San Francisco. That signature in terms is required by the provisions of an act of the legislature of 1897, entitled "An act to require ordinances and resolutions passed by the city council, or other legislative body of any municipality, to be presented to the mayor, or other chief executive officer of such municipality, for his approval." (Stats. 1897, p. 190.) Prior to the passage of this act it was not required. (*Truman v. Board,* 110 Cal. 128.) But before this act it had been believed by the legislature and by the people that it would be wiser to relieve charters of cities from the operation of general laws affecting municipal affairs, lest otherwise there would be danger of the charter provisions being en-

tirely "frittered away." In accordance with this belief, an amendment to the constitution was adopted in 1895 (Stats. 1895, p. 450) providing that "cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, *except in municipal affairs,* shall be subject to and controlled by general laws." The amendment is found in the italicized words. The act of 1897 unquestionably deals with a municipal affair, the mode and manner of the passage of ordinances and resolutions provided for in the charter. Under this constitutional amendment, such acts now apply only to cities and to their charters which have organized under the general scheme embraced in the municipal corporation act. (Stats. 1883, p. 93.) San Francisco is not one of such cities, and the act of 1897 has, therefore, no application to it.

For the foregoing reasons, a peremptory writ of mandate should issue as prayed for, and it is ordered accordingly.

Beatty, C. J., Van Fleet, J., Harrison, J., McFarland, J., and Temple J., concurred.

GAROUTTE, J., concurring.—Section 1 of the act of the legislature found in the Statutes of 1881, which deals with the fixing of water rates, casts a duty upon the board of supervisors of the city and county of San Francisco of fixing those rates in the month of February of each year. Section 8 of the same act declares: "Any board of supervisors or other legislative body of any city and county, city, or town, which shall fail or refuse to perform any of the duties prescribed by this act at the time and in the manner hereinbefore specified, shall be deemed guilty of malfeasance in office, and, upon conviction thereof at the suit of any interested party in any court of competent jurisdiction, shall be removed from office." The board of supervisors of the city and county of San Francisco failed to fix water rates in the month of February, and thereupon, at the suit of one Fitch, and under the authority found in the aforesaid section of the act of 1881, the supervisors of said city and county have been removed from office by the judgment of the superior court.

The construction given this act by the learned judge of the trial court, as evidenced by the judgment rendered, is that the

word "board" has reference to and includes individually all the members of the board. This is apparent when, upon inspection, we find the judgment removing each member of the board from office. This construction is evidently the sound one, and the only reasonable one that can be given the act, for a "board of supervisors" is an entity only when in session. It could not be guilty of a malfeasance in office, and certainly could not be convicted of a malfeasance in office. Again, the "board" holds no office, and therefore of necessity could not be removed from office. Hence, the section has no intelligible meaning, unless the word "malfeasance" be held as applying to the members individually constituting the board. This is the necessary construction of the act, and such construction renders it palpably unconstitutional. It violates fundamental principles of law. The legislature has no power arbitrarily to deprive men of valuable rights. It has no power to declare an office forfeited because, forsooth, the holder of another office has failed to do his duty. Justice is not administered that way. Proceedings under this section are quasi criminal, and one person may not be punished for the crimes of another. Under this section the innocent and the guilty are punishable alike, and the law never justifies the punishment of a person who has committed no crime. A public official who has done his duty in all things is not guilty of malfeasance in office, and the legislature has no power to so declare. If section 8 of the act had declared the penalty to be a fine of five hundred dollars, or an imprisonment in the county jail for thirty days, rather than removal from office, it could hardly be contended by anybody that a supervisor who had done everything in his power to carry out the law in the fixing of water rates could be fined or imprisoned because the rates were not fixed in the month of February. No act of the legislature could furnish legal justification for such a proceeding; and the fact that this judgment is one of forfeiture of office, rather than fine or imprisonment, is wholly immaterial.

The legislature has power to fix the tenure of office. It has the power to declare that upon the happening of a certain event that official tenure shall cease; but it is evident that such was not the intention here. By this act the legislature was not fixing terms

of office.   This section was enacted in furtherance of the constitutional provision which provides that the legislature may declare penalties for a failure to fix water rates.   The purpose of the legislature in enacting section 8 was to visit a penalty upon each member of the board of supervisors in the form of a forfeiture of office for a neglect of the board to fix rates.   The phrases "guilty of malfeasance in office," and "upon conviction," which are found in the act, abundantly indicate that this was the purpose of the section.

Section 11 of article XX of the constitution declares: "Laws shall be made to exclude from office, serving on juries, and from the right of suffrage, persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes."   We here find "malfeasance in office" placed in the category of high crimes, and the legislature directly empowered to cut off the rights of citizenship from all those adjudged guilty thereof.   The supervisors have been convicted of malfeasance in office.   Grave consequences follow from such a conviction, and no legislative act, however explicit its intention, can visit those consequences upon innocent men.

For the foregoing reasons, the law is unconstitutional, the judgment of the trial court removing the individual members of the board of supervisors from office void, and the writ of mandate should issue.   I concur in the judgment.