[S. F. No. 4856.   In Bank.—August 19, 1907.]

HARRY G. McKANNAY, Petitioner, v. SAMUEL W. HORTON, as Auditor of the City and County of San Francisco, Respondent.

PUBLIC OFFICERS—MANDAMUS—TITLE INCIDENTALLY DETERMINED.—The rule that title to an office cannot be incidentally determined in *mandamus* is merely one of procedure,—the rule, that is to say, of our statute, that such writ will issue only in cases where there is not another plain, speedy, and adequate, or specially prescribed statutory, remedy. The rule is not jurisdictional, and its application to a particular case involves only the exercise of sound legal discretion.

ID.—MAYOR OF SAN FRANCISCO—TWO PERSONS CLAIMING OFFICE—MANDAMUS BY SECRETARY.—Where there are two persons each claiming to be the *de facto* mayor of the city and county of San Francisco, each of whom has appointed a different person as his secretary, the situation is one of sufficient urgency to warrant the maintenance by one of such appointees of a proceeding in *mandamus* against the auditor for the approval of his claim for salary, in which it may be incidentally determined who is the *de facto* mayor.

ID.—DE FACTO MAYOR—BETTER LEGAL TITLE.—There cannot be two *de facto* incumbents of one office at the same time, and where two are acting simultaneously, each under claim of right, that one alone will be recognized who appears to have the better legal title.

ID.—CONVICTION OF FELONY—VACANCY IN OFFICE.—By section 10 of article XVI of the charter of the city and county of San Francisco, and by section 996 of the Political Code, the office of mayor of such city and county *ipso facto* became vacant upon the conviction of the incumbent of a felony.

ID.—TIME OF CONVICTION—VERDICT AND JUDGMENT.—Where the mayor
of the city and county of San Francisco had been tried on a charge
of felony, a verdict of guilty thereof had been returned and entered
against him, and judgment entered thereon, which had been duly
certified to the board of supervisors, who thereupon declared the
office vacant, then, if not before, he was convicted, and the event
had occurred which, by the terms of the statute and of the charter,
vacated the office.

ID.—APPEAL—EFFECT OF IN STAYING JUDGMENT—VACANCY NOT STAYED.
—The operation of the judgment convicting the mayor of a felony,
so far as it created a vacancy in the office, was not suspended by
the perfecting of an appeal from the judgment and the granting of
a certificate of probable cause by the trial judge prior to the elec-
tion by the board of supervisors of a successor to fill the vacancy in
the office and prior to its declaration of a vacancy therein.

ID.—SECRETARY OF MAYOR—APPOINTMENT OF SUCCESSOR EFFECTS RE-
MOVAL.—The secretary of the mayor of the city and county of San
Francisco holds his position only during the mayor's pleasure, and
he is removed from office whenever a new secretary is appointed and
assumes the duties of the office.

APPLICATION for a Writ of Mandate to the Auditor of
the City and County of San Francisco.

The facts are stated in the opinion of the court.

William B. Kollmyer, for Petitioner.

Maurice L. Asher, and William H. H. Hart, for Respondent.

BEATTY, C. J.—This is a petition for a writ of mandate
to compel the allowance of a claim for salary of the secretary
of the mayor of San Francisco. There are two persons claim-
ing to be mayor *de jure* of the city, and each is assuming to
act in that capacity. Each has appointed a secretary, both
of whom have presented claims for salary for the month of
July, 1907. The auditor cannot approve more than one claim,
and, being uncertain which is valid, refuses to approve either.
Practically, he takes the position of a stakeholder, willing to
allow and certify the lawful claim as soon as it shall be
determined which is lawful. Recognizing the difficulty of his
position, the court in ordering the issuance of the alternative
writ directed service to be made of a copy of the writ, together
with a copy of the petition, upon John J. Boyle, the rival
claimant to the office of secretary, and upon Eugene E.

Schmitz, who was the *de jure* and acting mayor at the time of his appointment. Acting upon this suggestion, said Boyle has made himself a party to the proceeding by filing an answer to the petition, setting forth the facts upon which he founds his claim to be rightfully in the exercise of the duties of the disputed office. The cause has been submitted for decision upon demurrers to the answers of respondent and Boyle and upon facts stipulated by the parties where not admitted by the pleadings. The case is as follows:—

At the general election in November, 1905, Eugene E. Schmitz was elected mayor of San Francisco for the next regular term of two years, and in pursuance of said election he duly qualified and entered upon the duties of the office on the eighth day of January, 1906. Thereafter he continued to discharge the duties of the office without question until July 9, 1907. (The fact that he was absent from the state on two occasions during this period, and that the president of the board of supervisors acted at such times as mayor *pro tem.,* is not material in this case.) On the thirteenth day of June, 1907, in the superior court of San Francisco, said Eugene E. Schmitz was found guilty of a felony—the crime of extortion—by the verdict of a jury, and on July 8th he was sentenced by the judgment of the court to a term of imprisonment for five years in the state's prison at San Quentin. On the following day the judge of the superior court, presiding in the department in which the trial and conviction of said Schmitz took place, in obedience to the requirements of section 997 of the Political Code, caused to be delivered to the board of supervisors a formal notice of said trial, conviction, and judgment, together with a duly authenticated copy of the judgment as entered. On the same day (July 9, 1907) the said board of supervisors regularly adopted a preamble reciting the election of Schmitz, his assumption of the office of mayor, his subsequent conviction of the crime of extortion, the judgment of conviction, and the fact that he was then actually confined in jail. They thereupon resolved that a vacancy existed in the office of mayor, and that they would proceed forthwith to elect a mayor to fill the vacancy for the unexpired term. Immediately after passing this resolution they did actually elect Charles Boxton as mayor for such unexpired term, who immediately qualified, and on the elev-

enth day of July took possession of the rooms in the city hall which had been set apart by a resolution of the board of supervisors for the use of the mayor, and designated as the office of the mayor of San Francisco, together with the records and papers therein. On the ninth day of July he had appointed the petitioner to the office of secretary, who on the same day duly complied with all the legal conditions and requirements relating to the qualification of such appointees and entered upon the discharge of the duties of the office. On the sixteenth day of July Boxton resigned the office of mayor, and on the same day Edward R. Taylor was elected by the board of supervisors to fill the vacancy for the balance of the unexpired term. He immediately qualified, and took possession of the office and records in the city hall, and has since continued to act as mayor, retaining the petitioner in his service as official secretary.

In the mean time Mr. Schmitz has never conceded that his conviction of a felony, or the judgment and sentence of imprisonment, as above stated, have occasioned any vacancy in the office of mayor, but, on the contrary, notwithstanding his confinement in the county jail in the custody of the sheriff, has been insisting on his continued right to the office, and actually discharging the duties of the office so far as under the circumstances he has been able to do so. Some of the city officials have continued to recognize his authority as the rightful mayor. Others, including the respondent, whose duty it is to act and whose authority to act depends in some instances upon written orders of the mayor, have refused to act unless upon concurrent orders from Schmitz and from Boxton or Taylor, and accordingly Schmitz has been certifying demands upon the city treasury. But Dr. Taylor, since he succeeded Mr. Boxton, has refused to act in conjunction with Mr. Schmitz in any official matter, and he alone is recognized by the board of supervisors as the rightful incumbent of the office of mayor.

On the day of his sentence (July 8, 1907) Schmitz took and perfected an appeal to the district court of appeal for the first district,—the proper court,—and at the same time applied for and obtained from the judge of the superior court a certificate of probable cause for his appeal, which is still pending and undecided. Thereafter he continued and still

continues to retain control of, and by his secretary, Boyle, remains in possession of, the office at Post and Franklin streets, which subsequent to the earthquake and fire, and down to the eleventh day of July, 1907, was the only office of the mayor of San Francisco. He also has in his possession the mayor's official seal.

The question we have to decide is, Who is entitled to the salary of secretary to the mayor for the last twenty-one days of July? But one salary can be paid, and that is claimed at the same time by McKannay, the appointee of Boxton, and by Boyle, the appointee of Schmitz. Each of the claimants has performed the duties of the office so far as he has been allowed to do so,—Boyle in the service of Schmitz, and McKannay in the service of Boxton and Taylor. It is conceded to be the duty of the respondent to allow the claim and direct its payment out of the city treasury when duly certified by the mayor that it is correct. Taylor has certified that McKannay's claim for services from July 10th to July 31st is correct, and Schmitz has certified that Boyle's claim for a full month's salary is correct. The question therefore reduces itself to this: Who is mayor of San Francisco?

With reference to this question Mr. Boyle makes the preliminary objection that in this proceeding by *mandamus* we cannot try the title either of the secretary or mayor. We are not cited to any authority for the proposition that the title to an office cannot be tried—that is, inquired into—when it is incidentally involved in a proceeding which a third party has a right to institute. The doctrine which Mr. Boyle means to invoke is more correctly stated in these terms: Title to an office cannot be determined in *mandamus* where there is another specific remedy prescribed, or where there is another plain, speedy, and adequate remedy at law. This doctrine is very fully and learnedly discussed in *People* v. *Olds,* 3 Cal. 167, [58 Am. Dec. 398], where the subject—the rule, its reasons, and its limitations—are elaborately considered, and where it is shown to be merely a rule of procedure, even in cases where it is sought to establish title to an office by a judgment which will operate as an estoppel in favor of a claimant and against an actual incumbent. Here, although we are obliged to decide for the purposes of this and like cases who is *de facto* mayor of San Francisco, we cannot determine by a

judgment which will operate as an estoppel between Dr. Taylor and Mr. Schmitz who is the *de jure* mayor, however little doubt there may be as to the proper decision of that question. And as to the title of the secretary, we are not required to *determine* that. When we have once decided who is *de facto* mayor we shall have no difficulty in determining whose order the respondent must obey in the matter of allowing such claims against the treasury as must be allowed on presentation of the mayor's certificate that they are correct. This whole question as to the right to decide incidentally upon the title to an office in a proceeding by *mandamus* was fully and carefully considered in *Morton* v. *Broderick,* 118 Cal. 481, 482, [50 Pac. 644], and the result of the decision there is the same as in the case of *People* v. *Olds,*—viz. that the rule in such cases as the present is, as above stated, merely a rule of procedure—the rule, that is to say, of our statute, that the writ of *mandamus* will issue only in cases where there is not another plain, speedy, and adequate, or specially prescribed statutory, remedy. (Code Civ. Proc., 1086.) The rule is not jurisdictional, and its application to a particular case involves only the exercise of sound legal discretion. In *Morton* v. *Broderick* it was held, as it must be held here upon even weightier considerations, that the gravity and urgency of the situation afforded ample ground for holding that there was no other remedy adequate or available to relieve the situation except *mandamus,* which was accordingly allowed notwithstanding the effect must be practically to end the dispute as to which of two rival bodies was rightfully the board of supervisors of the city. The situation here is certainly as grave as it was then. The government of the city must come to a standstill if claims of public creditors cannot be paid, and many important matters essential to the public welfare must be left uncared for unless some person is recognized as properly entitled to exercise the varied and important functions pertaining to the office of mayor.

This preliminary objection being disposed of, we return to the question, Who is mayor of San Francisco? Dr. Taylor and Mr. Schmitz are each claiming to be at the same time the *de jure* and *de facto* mayor. It will appear from the facts above stated that each has some claim to be the *de facto* mayor. Dr. Taylor is in possession of the offices provided for

the mayor by the board of supervisors,—the governing body of the city and county,—and is recognized by that board as the rightful mayor. Mr. Schmitz is in control through his secretary of the premises occupied by the mayor at the date of his conviction, but he is himself a prisoner in the county jail, where it is the duty of the sheriff to keep him closely confined. Nevertheless his right to act is maintained by some at least of the other city and county officers and by many private persons who resort to him for the purpose of transacting official business. He also is in possession of the official seal used by him up to the time of his conviction, while Dr. Taylor has been provided with a new seal. If these facts alone were considered, it might be difficult to decide which of the two is *de facto* mayor. But in such cases the law affords a rule of decision which in this case is not difficult of application. There cannot be two *de facto* incumbents of one office at the same time, and where two are acting simultaneously, each under claim of right, that one alone will be recognized who appears to have the better legal title. (*Morton* v. *Broderick*, 118 Cal. 485, 486, [50 Pac. 644].) For the purpose therefore of determining who is mayor *de facto* of San Francisco we must inquire who appears to be mayor *de jure*.

By the charter of the consolidated city and county it is provided that "An office becomes vacant when the incumbent thereof dies, resigns, is adjudged insane, convicted of a felony or of an offense involving a violation of his official duties," etc. (Art. XVI, sec. 10.) And by section 996 of the Political Code it is provided that "An office becomes vacant on the happening of either of the following events before the expiration of the term:—

1. The death of the incumbent. . . .

8. His conviction of a felony or of any offense involving a violation of his official duties."

It will be seen that with respect to the case in hand the provisions of the charter and the state law are identical. Either in the absence of the other would give the same effect to any one of the enumerated contingencies, including conviction of a felony, that ensues in the case of the death of the incumbent,—that is to say, the office *ipso facto* becomes vacant. (*People* v. *Fleming*, 100 Cal. 540, [38 Am. St. Rep. 310, 35 Pac. 163]; *People* v. *Brite*, 55 Cal. 79.)

On the thirteenth day of June, 1907, the verdict of guilty in People *v.* Schmitz was returned and recorded, but we are not required to decide in this case that the entry of a verdict of guilty constitutes a "conviction" in the sense of the statute, for here a vacancy was not declared by the board of supervisors, and Boxton was not elected until the ninth day of July, after the entry of judgment on the 8th had been duly certified to the Board. At that date certainly, if not before, Mr. Schmitz was convicted. The event had occurred which, by the terms of the statute and of the charter, vacated the office.

It is contended, however, that the perfecting of an appeal from the judgment and the granting of a certificate of probable cause by the trial judge prior to the election of Boxton and prior to the declaration of a vacancy in the office suspended the operation of the judgment for every purpose until the appeal, which is still pending, shall be finally determined. We are clearly of the opinion that the statute will not bear that construction. An office becomes vacant when the incumbent is convicted of a felony, and also it becomes vacant when he is convicted of any offense—whether felony or misdemeanor —if it involves a violation of his official duties. There are felonies which involve no violation of official duty; there are felonies, such as extortion by a public officer, which do involve a violation of official duty; and there are simple violations of official duty which are misdemeanors solely for that reason. Whether a felony does or does not involve a violation of official duty, the indictment will charge the facts constituting the felony, and a verdict of guilty will import a sentence of imprisonment in the state prison, to be executed at once unless a stay of proceedings pending an appeal is obtained through the medium of a certificate of probable cause, and even in that case the defendant is committed to close custody in the county jail to await the result of his appeal, unless the court in the exercise of a discretion rarely exercised, and only in exceptional cases, admits him to bail. The result is that a public officer convicted of a felony is placed by the verdict in a position and under a physical restraint which prevents him from performing the duties of his office. But if the misconduct alleged against a public officer is a misdemeanor only, and only such because it is a violation of official duty,

the proceeding against him is under the provisions of chapter 2 of part II of the Penal Code (secs. 758-772.) A verdict of guilty upon an accusation based upon the provisions of that chapter does not involve imprisonment of the defendant or any other penalty, except removal from office. It does not, in other words, disable the officer to discharge the duties of the office pending the appeal, and accordingly it is specially provided that in such cases he is not even suspended from office until thirty days after the entry of judgment, and not then if in the mean time he shall have taken an appeal and obtained a certificate of probable cause. (Pen. Code, sec. 770.) This special provision for an entire suspension of the operation of the judgment in an exceptional case shows what the rule is in all other cases, and the ground of the exception affords conclusive evidence of the meaning and motive of the rule. It means that since a prisoner in close custody cannot administer a public office, he cannot be allowed to stand in the way of the appointment of one who can perform its duties. No man has a property right in an office paramount to the public interest. He has a property right in the salary and emoluments of an office while he is capable of discharging and actually discharges its duties, but when by his fault or misfortune he is no longer able to render the service the public interests demand that he shall give way to some one who can. An official who is declared insane is simply unfortunate, but he ceases to be an official; an innocent man who is unjustly convicted of a felony is doubly unfortunate, but the fact that he may by means of an appeal ultimately succeed in establishing his innocence does not entitle him in the mean time to hold on to a public office which he is no more capable of serving than if he were insane. The law allows an appeal from a conviction of felony because, so far from being against the public interest, it is promotive of the public interest that a person accused of crime should have every reasonable opportunity of vindicating his innocence. But if the person so convicted is the incumbent of a public office these considerations do not weigh in favor of retaining him in that position pending an appeal. The pendency of the appeal does not affect the presumption of guilt, which arises immediately upon the rendition of the verdict, and it would be strange indeed if in a state which gives such weight to that presumption as to deprive

the defendant of the right to bail, and to require in all but rare and exceptional cases that he be detained in close custody in the common jail, the law should at the same time provide for his continuance in an office the duties of which he cannot discharge. There is no such law. The only effect of an appeal and certificate of probable cause is to stay the execution of the judgment. Removal from office is not part of the judgment of conviction in cases of felony, though a consequence which flows from it, and the statute in express terms defines and thereby limits the effect of the appeal and certificate of probable cause. "If the certificate provided for in the preceding section is filed, the sheriff must, if the defendant be in his custody, upon being served with a copy thereof, keep the defendant in his custody without executing the judgment, and detain him to abide the judgment on appeal." (Pen. Code, sec. 1244.) We are cited to a number of cases decided in other jurisdictions which are supposed to conflict with these views. We do not think there is any conflict or discordance except such as follows necessarily from different statutory provisions. On the other hand, there are numerous decisions by courts of the highest authority which fully sustain our conclusions. We do not consider it necessary to review these cases. We have only to construe our own statutes and the charter of San Francisco, the terms and policy of which are plain and identical, and there is no decision of this court which is in the least degree at variance with what is here held. The case of *People v. Treadwell*, 66 Cal. 400, [5 Pac. 686], comes as near as any other to supporting the contention of respondent, but it is distinguishable on several grounds. Treadwell, an attorney at law, was convicted of a misdemeanor in a justice's court and immediately appealed to the superior court. There was no law making his conviction operate *ipso facto* to deprive him of his license. It was only the foundation for a new proceeding in the supreme court to revoke his license, involving the issuance of a citation to show cause why he should not be removed and a hearing upon the rule day. The justice of the peace, notwithstanding the appeal, forwarded to the supreme court a certified copy of his docket, and a citation was issued to Treadwell to show cause why he should not be removed. In response to the citation he alleged the pendency of his appeal. The court held, and properly held, that the proceeding under

section 288 of the Code of Civil Procedure could not be instituted until the judgment became final. This is the rule generally in civil cases, and the rule was held applicable to a proceeding to revoke a license to practice law, which is essentially a property right. An attorney at law is not a public officer. He does not as such discharge any public function. His license, like the license of a physician, a druggist, a dentist, or an architect, merely enables him to engage in his vocation for the service of private employers and for his private emolument. The public is not concerned in depriving him of the right to practice his profession in the service of those who choose to employ him until it has been finally determined that he is unfit for the profession. The decision in Treadwell's case was clearly right, but a loose and inaccurate expression occurs in the opinion which, if it were a correct statement of the law, might afford some support to respondent's contention. It is said—*arguendo*—that an appeal to the supreme court operates a suspension of the judgment of the lower court *for all purposes*. This, as every lawyer knows, is not true. If in a civil cause the appellant does not file a sufficient undertaking to stay proceedings upon the judgment, execution will issue notwithstanding the pendency of the appeal, and may be levied upon the property of the judgment debtor, and the property may be sold, and an indefeasible title vested in the purchaser at the execution sale, notwithstanding the result of the appeal may be a complete and final reversal of the judgment of the trial court. And as in civil cases so in criminal cases,—a judgment not final may be proved for every purpose for which it is effectual. It may be proved for the purpose of showing a vacancy in office, just as in a civil case it may be proved to justify the levy of an execution, or to establish the title of the purchaser at the execution sale, and this even after it has been reversed on appeal.

The last objection urged by the respondent may be answered very briefly. He says the petitioner is not secretary to the mayor because it is conceded that Boyle was duly appointed to the place, and it does not appear that he has ever been removed. It would be a sufficient answer to this objection to say that the petitioner's claim is certified by the *de facto* mayor, but it may be added that in the case of the mayor's secretary, who holds the position only during the mayor's

pleasure, he is removed whenever a new secretary is appointed and assumes the duties of the office.

It is ordered that the peremptory writ of mandate issue as prayed.

Shaw, J., Angellotti, J., Sloss, J., Henshaw, J., McFarland, J., and Lorigan, J., concurred.

ANGELLOTTI, J., concurring.—While I have concurred in the foregoing, I deem it proper to add that I am satisfied that the effect of the charter provision declaring that an office "becomes vacant when the incumbent thereof dies, resigns, is adjudged insane, convicted of a felony," etc., was to create a vacancy in the office of mayor upon the rendition and entry of the verdict of conviction against the then incumbent. One is "convicted" of a crime when a verdict of guilty has been so given and entered against him, or when a plea of guilty has been given and entered. This is the well-settled meaning of the term as ordinarily used in our constitutional and statutory provisions, and I can see no warrant for concluding that it was used in any other sense in the charter provision under discussion. Under this view, it is entirely immaterial whether or not judgment has been given upon the conviction, or whether or not the execution of any judgment so given has been stayed by an appeal. The vacancy in the office is in no way dependent upon any judgment given on the conviction, but was fully and finally created by the happening of the event specified,—viz. the rendition and entry of the verdict of conviction.

There can of course be no question as to the power of the people of the city and county of San Francisco to make such provision in their charter as to purely municipal offices. As is shown in the opinion of the chief justice, the provision for the ouster of the incumbent in the contingency named is in no degree by way of punishment for any offense alleged to have been committed by him, but is solely for the purpose of securing an efficient, orderly, and decent discharge of the duties of the office, which doubtless it was deemed could not be had during the incumbency of one under a verdict of conviction of felony.

Sloss, J., and Shaw, J., concurred.