[No. 9302.    Department One.    February 16, 1911.]

STAR PUBLISHING COMPANY, *Respondent*, v. KNOSHER &

COMPANY, INCORPORATED, *Appellant*.[1]

CONTRACTS—MODIFICATION—CANCELLATION. A modification whereby a contract for advertising space on three days in the week was changed so as to take all the space on one day of the week does not amount to a cancellation of the contract.

CONTRACTS—BREACH—DAMAGES. Damages for breach of an advertising contract are not limited to the profits, but cover the full contract price, where the contract gave the newspaper the option to hold the space open or to utilize it for other purposes and in either event receive the full compensation fixed in the contract.

SAME—MEASURE OF DAMAGES—BURDEN OF PROOF. *Prima facie*, the measure of damages for the breach of an advertising contract is the contract price, and the burden. is upon the party in default to show facts in mitigation thereof.

Appeal from a judgment of the superior court for King county, Albertson, J., entered September 21, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*J. P. Wall*, for appellant.

*Brightman & Tennant*, for respondent.

GOSE, J.—On the 8th day of August, 1909, the plaintiff and the defendant entered into a contract, the body of which is as follows:

"We hereby contract with the Star Publishing Company for advertising space in the Seattle 'Star,' and the Star Publishing Company hereby sells space and agrees to carry and print in each space in the Seattle 'Star' advertising matter to consist of not less than 100 inches of display advertising space to be used each week for a period of one year from date, said space to be used as follows: 30 inches or more each Monday and Wednesday and 40 inches or more each Friday,

[1]Reported in 113 Pac. 569.

for which we agree to pay fifty-five (55) cents per inch for all space used and contracted for.

"This contract is an entirety covering the period above mentioned. Bills are to be presented monthly and paid within ten (10) days after presentation, and if not so paid within ten (10) days after presentation, the Star Publishing Company, may, at its option, take the advertisement out of the Seattle 'Star,' in which event the time said advertisement is not run shall not be counted as part of the above period contracted for; but the termination of said period may be extended, covering the time said advertising was omitted. Or the Star Publishing Company may hold said space at advertiser's disposal for the full period aforesaid, notwithstanding such default in payment and collect therefor the full contract price. Copy is to be furnished not later than six o'clock p. m. of the day previous to insertion; and Monday copy not later than six p. m. the Saturday previous. Should the advertiser fail to furnish copy as provided in this contract, or should copy furnished not meet with approval of Star Publishing Company, then Star Publishing Company may continue to charge for said space until new copy is furnished. All matter is subject to the approval of the Star Publishing Company."

The plaintiff brought suit upon the contract to recover the stipulated compensation for the months of March, April, and May, 1910. The defendant pleaded affirmatively that in December, 1909, the contract was modified by the mutual consent of the parties, to the extent that the entire one hundred inches of space should be used on Friday of each week, instead of on three days of each week as specified in the contract, and that the contract was annulled on the 23d day of February, 1910. This was put in issue by the reply. The court found that the contract was modified to the extent that the entire space should be used on Friday of each week, but that it was not annulled; that before March, 1910, the defendant sought to cancel the contract, and thereafter declined to furnish further advertising matter; that the plaintiff at all times stood ready and able to carry out the contract, and refused to acquiesce in the defendant's demand for its cancella-

tion. A judgment was entered in favor of the plaintiff for the amount stipulated in the contract, for the months of March, April, and May, 1910. This appeal followed.

The evidence shows that the advertisement was published in one issue in March, that it was not thereafter published, owing to the refusal of the appellant to furnish the advertising matter, and that the space stipulated in the contract was thereafter used for other purposes.

The appellant first contends that the contract was cancelled by the mutual agreement of the parties. This contention has no support in the evidence. The only modification in the contract was that the entire space should be used in one issue of each week instead of being distributed through three issues. It is clear that this was a modification only in the respect stated, and not a cancellation. One party to a contract cannot escape liability by refusing to perform it. To make or annul a contract requires a meeting of minds of the parties upon the subject-matter.

The appellant next suggests that, if it breached the contract, its liability is limited to the profit that would have resulted to the respondent from its performance, and that, the respondent having failed to offer any evidence on that subject, the judgment should have been against it. This position is untenable, because the contract provides that, in default of payment as stipulated, the respondent "may hold such space at advertiser's disposal for the full period fixed, notwithstanding such default in payment, and collect therefrom the full contract price;" or that, "should the advertiser fail to furnish copy as provided in the contract, or should copy furnished not meet with the approval of the Star Publishing Company, the Star Publishing Company may continue to charge for such space until new copy is furnished." If any meaning is to be given to the clause last quoted, it becomes evident that the respondent reserved either of two options, viz., (1) to hold the space open, or (2) to utilize it for other purposes for the breach stated, and in either event

to receive the compensation fixed by the contract. The parties themselves have fixed the damages in case of a breach of the terms of the contract, and it does not lie with the court to change or vary it.

However, if we should adopt the view that the profits of the contract are the measure of the appellant's liability, the burden would be upon it, as in contracts for personal services, to show the facts in mitigation of damages, upon the ground that *prima facie* the measure of damages is the contract price. *Ware Bros. Co. v. Cortland Cart & Carriage Co.*, 122 N. Y. 439, 85 N. E. 666; *McDermott v. De Meridor Co.* (N. J.), 76 Atl. 331.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.