[Civ. No. 2305.   First Appellate District.—April 2, 1918.]

MARCONI WIRELESS TELEGRAPH COMPANY OF AMERICA (a Corporation), Plaintiff, Appellant and Respondent, v. NORTH PACIFIC STEAMSHIP COMPANY (a Corporation), Defendant, Respondent and Appellant.

CONTRACT—INSTALLATION OF WIRELESS TELEGRAPH EQUIPMENT—DAMAGES FOR BREACH—EVIDENCE—BURDEN OF PROOF.—In an action for damages for breach of a contract whereby it was agreed that the plaintiff would install wireless equipment in a certain steamship in the possession of defendant under a charter, keep it in repair, and furnish and pay a competent operator, the mere introduction of the contract and showing the breach thereof did not make out a *prima facie* case of damages for the unpaid contract

price, since it was obvious that plaintiff would be put to more than trivial expense in performing its part of the contract, and its profit substantially less than the contract price, and therefore the burden was upon the plaintiff to prove the profits it would have made had defendant complied with its contract and paid for the services.

TELEGRAPH CORPORATIONS—FAILURE TO FILE SCHEDULE OF RATES WITH RAILROAD COMMISSION—CONTRACTS NOT VOID—CONSTRUCTION OF PUBLIC UTILITIES ACT.—A contract for the installation of a wireless equipment on a steamship and furnishing an operator therefor is not void because of the failure of the telegraph company to file with the railroad commission a schedule showing the charges for the transmission of messages, as required by the Public Utilities Act, section 18 (Stats. 1911, p. 18), since the act does not make such contracts unlawful, but merely imposes a penalty for its violation.

APPEALS from portions of the judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Samuel Knight, and F. E. Boland, for Plaintiff, Appellant and Respondent.

Marcel E. Cerf, and Charles H. Sooy, for Defendant, Respondent and Appellant.

KERRIGAN, J.—This is an action wherein plaintiff seeks to recover from the defendant certain sums of money claimed to be due it for the installation and operation of certain wireless equipment on vessels in the possession of the defendant, under two written contracts.   The complaint is in two counts.   The first count is based on a contract dated January 15, 1914, and the second upon a contract dated July 1, 1913. Judgment went for the plaintiff on the first count for the sum of one dollar, and on the second count for the sum of $1,620.   Both parties being dissatisfied with the judgment have appealed therefrom, plaintiff from that part thereof which awards to it only nominal damages, and defendant from the portion thereof by which plaintiff recovers the sum of $1,620.

Considering plaintiff's appeal first, it is disclosed by the record that in the month of January, 1914, the parties entered into the first of the above-mentioned contracts, whereby

it was agreed that the plaintiff would install wireless equipment in a certain steamship in the possession of the defendant under a charter, and would provide and pay a competent operator, for which services defendant agreed to pay to plaintiff one hundred dollars per month, and the contract was to continue for one year. Under this contract the plaintiff installed wireless equipment on said vessel and furnished a competent operator, and defendant paid to plaintiff the sum of one hundred dollars per month up to March 31, 1914, when it discontinued such payments. On the seventh day of April, 1914, the charter under which the defendant held the vessel was canceled and the ship was taken over by the owner; whereupon the defendant sought to cancel the contract, but plaintiff refused to permit it to do so, and after the period covered by the contract had elapsed brought this action.

There is no dispute between the parties as to the measure of damages applicable to the case if the plaintiff is entitled to any damages at all. If we understand the contentions of the parties, the damages recoverable by the plaintiff consist of the profit which would have resulted to it if it had been permitted to carry out its contract, plus any costs and expenses incurred as a consequence of the breach. (*McConnell* v. *Corona*, 149 Cal. 60, 65, [8 L. R. A. (N. S.) 1171, 85 Pac. 929]; Civ. Code, sec. 1512; *Ahlers* v. *Smiley*, 163 Cal. 200, 205, [124 Pac. 827]; 13 Cyc. 156.) The question upon which counsel disagree is as to where lies the burden of proof, plaintiff's contention in that behalf being that the payments required by the contract furnish *prima facie* the measure of damages, and that the burden of proof was on the defendant to show, if it could, that such were not the actual damages. Applying this principle, it is pointed out by plaintiff that upon the submission of the case, it having shown the facts as above narrated, and the defendant having shown nothing in mitigation of damages, the plaintiff was entitled to judgment for nine hundred dollars.

There is a class of cases in which if the obligor to the contract repudiates it before the obligee has had an opportunity to perform, the contract price is *prima facie* the measure of damages, and matters of mitigation and reduction must be shown by the obligor. Such are cases of contracts for personal services (*Milage* v. *Woodward*, 186 N. Y. 252, [78 N. E. 873]; *Howard* v. *Daly*, 61 N. Y. 362, 371, [19 Am. Rep. 285]),

contracts to pay an attorney's fee (*Reynolds* v. *Clark County,* 162 Mo. 680, [63 S. W. 382]), or an architect's commission (*Walker* v. *Lundstrom,* 132 Mo. App. 367, [112 S. W. 1]), and the commissions of a real estate broker (*Alderson* v. *Houston,* 154 Cal. 1, [96 Pac. 884], *Norman* v. *Vandenberg,* 157 Mo. App. 488, [138 S. W. 47]), or contracts for the publication of advertisements (*Star Publishing Co.* v. *Knosher & Co.,* 62 Wash. 215, [Ann. Cas. 1912D, 281, 34 L. R. A. (N. S.) 404, 113 Pac. 569] ; *McDermott* v. *De Meridor Co.,* 80 N. J. L. 67, [76 Atl. 331] ; *Ware Bros. Co.* v. *Cortland Cart & C. Co.,* 192 N. Y. 439, [127 Am. St. Rep. 914, 22 L. R. A. (N. S.) 272, 85 N. E. 666].)

In the last-mentioned case an advertiser desired to cancel its contract with a publisher under which the latter was to publish an advertisement once a month for twelve months for a certain sum to be paid when the contract was fully performed. The publisher refused to consent to the cancellation, and continued the publication for the entire period, and upon the advertiser declining to pay therefor, brought an action for the contract price. Upon the trial the plaintiff proved the contract and its performance, and rested. Thereupon the defendant produced evidence to the effect that it had canceled the contract, and rested. It was held that the contract was *prima facie* the measure of damages, and the rule applied that where a contract for future employment had been entered into and afterward revoked by the employer, in an action for breach of contract the damages are *prima facie* the amount of wages for the full term, and the burden of proof is upon the defendant to show facts in mitigation of damages. Commenting upon the conclusion arrived at in that case the court said: "In reaching the result above indicated we wish it understood that it is not our purpose to extend the rule beyond the facts found in this case. Nor is it our purpose to limit or impair the rule that in the breach of an ordinary contract for the manufacture of an article or the supplying of goods or merchandise, including that which is known as ordinary job printing, the damage is the difference between the contract price and the cost of the goods, merchandise, or manufactured article, in which the burden of showing the damage rests on the plaintiff. The distinguishing feature in this case, as we regard it, is that the publishing of an advertisement in a periodical

is the same as the publishing in a daily, or weekly newspaper, which involves the investment of no additional capital or the use of any material other than the ink used and the paper upon which it is printed, and these articles are of such trivial value as not in our judgment to change the character of the contract from one for services to be rendered.''

While the present case in some of its features is similar to the cases cited, it is more like an action for breach of contract for board or lodging (13 Cyc. 163), or for goods sold and delivered (*Hellings* v. *Heydenfeldt,* 107 Cal. 577, 585, [40 Pac. 1026]; *Winans* v. *Sierra Lumber Co.,* 66 Cal. 61, [4 Pac. 952]), or to construct a tunnel (*McConnell* v. *Corona City W. Co.,* 149 Cal. 60, [8 L. R. A. (N. S.) 1171, 85 Pac. 929]), or a contract to furnish freight (*Utter* v. *Chapman,* 43 Cal. 279), in which cases actual damages only are recoverable; and the burden of showing such damages rests on the plaintiff. Here the plaintiff was to install wireless equipment and keep it in repair, and to furnish and pay a competent operator. It is obvious that plaintiff would be put to more than trivial expense in performing its part of the contract, and that its profit would be substantially less than the contract price. Hence, we think, it cannot be held that the mere introduction of the contract, and showing the breach thereof, made out a *prima facie* case of damages for the unpaid contract price. It may not be amiss to add that the fact that the proof of the profit which plaintiff would have made if the defendant had complied with its contract was chiefly, if not entirely, within the control of the former, furnishes a strong reason for placing that burden upon it. We think it follows that the trial court correctly concluded upon the showing made that the plaintiff was entitled to no more than nominal damages.

We will now consider defendant's appeal. In its answer it alleged, as it now contends, that the contracts here sued upon are void because the plaintiff failed to file with the railroad commission of this state a schedule of rates for the transmission of messages between points within and without the state under the provisions of section 18 of the Public Utilities Act. The trial court rejected this contention and rendered judgment for plaintiff for $1,620 under the second count, as before stated.

From a stipulation of facts entered into by the parties it appears that the plaintiff is engaged in the business of fabricating, leasing, renting, and selling wireless equipment and also in the business of transmitting messages thereby; that it rents such equipment to ship owners under contracts similar to those here involved; that it has shore stations so equipped; that it transmits messages from and to ships equipped with its apparatus for hire for anyone other than the ship owner; that such messages are transmitted without charge to the ship owner, and that no messages are transmitted from one station to another in California. It also appears from the stipulation of facts that the contract which is now being discussed, made July 1, 1913, like the first contract considered, provided that the plaintiff was to install on certain steamships in the possession of the defendant wireless equipment, and to furnish and pay competent operators, for which service it was to receive a specified sum per month for a certain length of time, and that there became due to plaintiff under such contract the sum of $1,620.

The legislature of this state declared (Stats. 1911, p. 18 et seq., sec. 18, p. 30) that upon the Public Utilities Act becoming effective, every telegraph (including wireless) corporation (section 2) should print and file with the railroad commission a schedule showing the charges for the transmission of messages between all points within this state and all points without the state upon its route; and between all points within the state and all points without the state upon every route operated or controlled by it (section 18); and the legislature further declared that every telegraph (including wireless) corporation which should violate or fail to comply with any provision of the act should be subject to a penalty for each offense (section 76), and that every officer of such corporation who should violate or fail to comply with any provision of the act should be guilty of a misdemeanor (section 77).

Assuming, without deciding, that the plaintiff is within the category of section 18 of this act, and that the company would be subject to the penalties therein provided, and its officers guilty of misdemeanors, for noncompliance with the provisions of the act, still we think this contract is not void, as contended by the defendant, so as to prevent recovery upon it. Section 18 of the act does not undertake to make

unlawful the transaction of business if the required schedule of rates shall not have been filed. Nor is this a case where a member of the public desiring to send a message is without the benefit that the filing of the company's rates would give him. It is a case of a contract for a special service at an agreed price arrived at by negotiation between the parties. The contract provides, among other things, that the plaintiff will send from and receive on board the defendant's ships through its coast stations in the United States, or between any ships equipped with plaintiff's system, messages unlimited in number relating to the defendant's business, for which the defendant pays a fixed sum, and furnishes certain accommodation for the operators and the equipment. Nor would the fact that the plaintiff exacts the same price from other ship owners for similar service bring this contract within the purview of the act in question. We think this case comes within the principle applied in *Luchini* v. *Roux*, 29 Cal. App. 755, [157 Pac. 554], in which the plaintiff sought to recover from the defendants the agreed price of a quantity of milk sold and delivered to them. The defense set up was that the contract was void because the plaintiff, a dairyman, had failed to comply with sections 6 and 16 of the so-called Dairy Act, requiring those engaged in the dairy business to register as provided by the act. This court held that while the act imposed a penalty upon a dairyman who neglected to comply with its provisions as to registration, such failure did not render unlawful a contract made for the sale of milk produced in his dairy.

So here, even if section 18 of the Public Utilities Act in its requirement for the filing of schedules of rates included the kind of service involved in this case (and we do not think it does), it does not render unlawful or void a contract for such service. The penalty imposed by section 76 of said act is aimed directly at the failure to file the schedule of rates, and not at the act of transmitting business without having filed such schedule; nor is there anywhere in the act any inhibition against transacting business before compliance with such requirement. The situation here is entirely dissimilar from that where a license is required for the conducting of business and its prohibition in the absence of such license. There the sanction of the statute is directed to the act of doing business, while in the case at bar the

penalty relates to a matter that is merely incidental and collateral to the business operations of the plaintiff corporation.

It results from what we have said that as to each appeal the judgment must be affirmed, and it is so ordered.

Lennon, P. J., and Beasly, J., *pro tem.,* concurred.