[Civ. No. 24514. Second Dist., Div. Two. Sept. 22, 1960.]

FLORENCE ADLER et al., Appellants, v. CITY COUNCIL OF THE CITY OF CULVER CITY et al., Respondents.

Phill Silver for Appellants.

M. Tellefson, City Attorney, for Respondents.

ASHBURN, J.—This is a taxpayers' action for a declaratory judgment invalidating an ordinance rezoning a certain parcel of realty (9.56 acres) owned by one Blanco, and for an injunction against enforcement of said ordinance. From an adverse judgment plaintiffs appeal.

Appellants have made no charge of fraud, collusion, lack of bona fides or failure on the part of the City Council to perform any duties specially enjoined upon it nor do they challenge the wisdom of the zoning change which was actually made by the council. No attack is made upon the findings of fact. Their attack rests wholly upon legal propositions,— violation of the Brown Act (*infra*) by the city's Planning Commission, invalidity of section 16.101 of the basic zoning ordinance of respondent city and invalidity of that basic ordinance as a whole.

Culver City operates under a home rule charter (Stats. 1947, p. 3386; amended by Stats. 1951, p. 4258 and Stats.

Ex. Sess. of 1952, p. 586), which creates a city council of five members and a planning commission consisting of nine members, the functions of which commission are advisory with respect to zoning. A basic zoning ordinance, Number CS-147, was adopted in 1952 providing (§ 16.08) that an application for a variance or change of zone shall be considered at a public hearing after notice mailed to owners of property within a radius of 300 feet of the exterior boundaries of the property involved in the application and, where change of zone is sought, after additional notices have been posted at prescribed intervals around the property. After public hearing the commission transmits to the city council "its recommendations together with the complete record of the case," the council holds a final hearing thereon and "[t]he recommendation of the Planning Commission shall be approved unless reversed by the City Council" (§ 16.101), which quoted phrase means reversal by a majority, three members, of the council (Charter § 510). In the present instance it was stipulated that public hearings were held by the planning commission on July 30, 1958, and August 20, 1958, and by the city council on October 6, 1958, all pursuant to public notices required by the basic zoning ordinance Number CS-147. The court found upon ample evidence that all persons interested in the matter, including the plaintiffs, were given an opportunity to be heard and were heard at the planning commission meetings and at the one held by the city council.

The recommendation of the commission as adopted on September 3, 1958, and transmitted to the council, imposed 14 paragraphs of conditions upon the granting of the Blanco application (filed June 17, 1958). The city council after its hearing of October 6, 1958, adopted a resolution (No. CS-3906) and an ordinance (No. CS-346) approving with modifications the application of Blanco and reclassifying the property in Zone C-3a (retail shopping center). The resolution recites that: "[I]t appears that certain of the recommendations of the Planning Commission are not necessary for the protection of the adjacent property owners, are unfair to applicant, are not within the purview of proper zoning regulations and are of questionable legality"; and specifically finds: "That the recommendations of the Planning Commission, having been given careful consideration, appear to go beyond what is reasonably necessary to protect the public and adjacent property owners in reclassifying said property for the use proposed by applicant, unnecessarily penalize said ap-

plicant in the use of said property, and include in the proposed precise plans the area abutting Jefferson Boulevard already classified Zone C-3 and not before the Commission in connection with the application under consideration." The resolution and ordinance depart substantially from the conditions suggested by the commission and impose a long list created by the council.

Appellants' major contention is that all of these proceedings are void because infected by a violation of the "Secret Meeting Law" or Brown Act (now Gov. Code, §§ 54950-54958) which was enacted in 1953 and provides, in section 54953 : "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." Section 54952 includes within the term "legislative body" the "governing board, commission, directors or body of a local agency, or any board or commission thereof."

The application of Blanco for a zoning change was not filed until June 17, 1958. On June 13, four days earlier, the members of the planning commission (except one) attended a dinner at the Beverly Hills Club, in Beverly Hills, which was given by Blanco pursuant to arrangement made between him and Harry C. Bond, the city's Planning Director. One of the members present referred to it at the trial as a "fact-finding meeting" which seems to be an apt description. The trial court found upon adequate evidence that "dinner was served and general discussions were held relative to community planning and zoning, at which time the said R. J. Blanco was interrogated by members of the Planning Commission covering the following matters, and gave answers thereto: (A) His conception of the shopping center he proposed to construct if the zone change were approved; (B) The kind of tenants he hoped to attract; (C) The volume of business he anticipated; and (D) His plans for parking ratio.

"That said dinner meeting was informally carried on in the nature of a social gathering and that no action, commitments or promises, or suggestions of actions, commitments or promises were made to said R. J. Blanco with respect to the re-zoning of the property owned by him and described in his application for re-zoning subsequently filed, nor was said proposed re-zoning or application for re-zoning deliberated upon by said Commission members at said meeting."

The members of the commission had been advised by the city attorney that the act does not apply to charter cities. There is considerable basis for such a conclusion[1] but we do not find solution of that question necessary in this case.

Viewing the evidence most favorable to respondent as we must (*Primm* v. *Primm*, 46 Cal.2d 690, 694 [299 P.2d 231]; *New* v. *New*, 148 Cal.App.2d 372, 383 [306 P.2d 987]), the following situation emerges. As there was then no application for change of zoning before the planning commission the discussion at the dinner necessarily was general. No one presided over the exchange of views and the persons present at times split into small groups and talked among themselves. One commissioner suggested a Scottsdale motif, another Disneyland and another Farmers Market. One member asked Blanco if he had considered high-rise apartments. Commissioner Dekker asked about building a service tunnel. Blanco talked principally about establishing a shopping center. He

---

[1]It is well established that the mode and manner of passing ordinances is a municipal affair. (*Morton* v. *Broderick*, 118 Cal. 474, 486-487 [50 P. 644]; *In re Pfahler*, 150 Cal. 71, 82 [88 P. 270, 11 Ann.Cas. 911, 11 L.R.A. N.S. 1092]; *O. T. Johnson Corp.* v. *City of Los Angeles*, 198 Cal. 308, 326 [245 P. 164]; *Brougher* v. *Board of Public Works*, 205 Cal. 426, 438-439 [271 P. 487]; *Sacramento Paving Co.* v. *Anderson*, 1 Cal. App. 672, 673 [82 P. 1069]; *City of San Buenaventura* v. *McGuire*, 8 Cal.App. 497, 502 [97 P. 526, 528].)

It was definitely held in the Brougher case, *supra*, that the Zoning Act of 1917 had no application to the Charter of the City and County of San Francisco. To the same effect see, *Brougher* v. *Board of Public Works*, 107 Cal.App 15, 24 [290 P. 140]; *Hurst* v. *City of Burlingame*, 207 Cal. 134, 138 [277 P. 308]; 55 Cal.Jur.2d, § 6, p. 515.

Section 54958, Government Code, says: ''The provisions of this chapter shall apply to the legislative body of every local agency notwithstanding the conflicting provisions of any other *state* law'' (emphasis added), implying absence of intent to control any municipal charter provision or action thereunder.

Section 54951 was amended in 1959 by inserting the phrase ''whether general law or chartered,'' making the section read: ''As used in this chapter, 'local agency' means a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency.'' Of course such an amendment, without more, implies a legislative intent to change existing law rather than to declare the meaning of one already on the books (45 Cal.Jur.2d, § 100, p. 614).

The trial court ruled herein that the Brown Act is not applicable to charter cities. Counsel advise us that the Legislative Counsel has ruled both ways upon the question. His first opinion (No. 11251), to the effect that the act does not apply to a charter city, was furnished to Assemblyman Brown under date of May 29, 1953, and preceded the enactment of the statute which was approved by the Governor on July 2, 1953 (Stats. 1953, p. 3269). The second opinion of Legislative Counsel was rendered after its passage, on August 4, 1956. The attorney general, in 27 Ops. Cal. Atty. Gen. 123, ruled that the act does apply to charter cities.

was asked about the parking ratio he anticipated, whether there would be a central theme or a random theme of development, what type of structures would be built and what sort of tenants obtained; he mentioned a drug store, junior department store, restaurant, and said certain streets should be widened and that he would dedicate some land for that purpose. Asked whether he would seek professional help in planning, he replied in the affirmative. No specific plan was presented or discussed, no vote taken upon any proposal, no decision made singly or collectively.

As above shown, two public hearings were held by the commission upon the application after its filing, plaintiffs were present and presented their views, as did many others who spoke for and against the application; the commission, when formally acting upon it, imposed conditions so onerous that the city council, after conducting its public hearing at which plaintiffs and others were heard, found that some of those conditions were unfair to applicant and would unnecessarily penalize him in the use of his property, rejected the commission's proposed conditions in large part and imposed others of its own. Thus it manifestly appears that the dinner gathering of June 13th could have had little if any influence upon the formal action of the commission and none upon the city council.

The resolution authorizing the ordinance recites the fact of consideration of ''the evidence and testimony presented, including the Report of the Planning Director and the recommendations of the Planning Commission and personal knowledge of members of the Council of the property involved.'' Obviously, legislative bodies are not limited to the taking of evidence or to other formalities in arriving at their conclusions upon contemplated legislation. Section 16.07 of the basic zoning ordinance (CS-147) of respondent city, provides: ''The Planning Commission shall cause to be made by its own members, or members of its staff, such investigation of facts bearing upon such application as will serve to provide all necessary information to assure that the action on each such application is consistent with the intent and purpose of this ordinance and with previous amendments, variances or modifications.''

In *Minney* v. *City of Azusa,* 164 Cal.App.2d 12, 34 [330 P.2d 255], it is said: ''The commission was required to make a factual investigation before the hearing and presumptively did so. As the decision had to be reached in the light of the

comprehensive zoning plan and of existing and future conditions, the members of the commission necessarily had to supplement the testimonial showing by resort to their own knowledge. (See 1 Yokley, Zoning Law and Practice (2d ed.), § 127, p. 308.)'' The cited section of Yokley contains this: ''A board is presumed to have special knowledge of those matters which are a part of their administration of the zoning ordinance and it has the right to act on such special knowledge. It is recognized that hearings before zoning boards are, to a certain extent, informal in nature and do not necessarily have to be conducted as are hearings before a court. The value of the testimony of an expert witness was for the zoning board of review to determine under all the circumstances.''[2]

 It seems quite evident that the language of the Brown Act was not directed at anything less than a formal meeting of a city council or one of the city's subordinate agencies. If it were, no practical line could be drawn. The members of the planning commission and the city council (whether the full number or only two or three members) would be impeded in conducting informal discussions among themselves, thus exchanging information, would be handicapped in viewing property upon which they were about to legislate, would be unable to confer with real estate experts or with

[2]At the 1960 session of the legislature the Senate adopted resolution No. 49, which recites:

''Whereas, The Brown Act specifically applies only to 'meetings' of local legislative bodies, and was not intended to prevent private discussions, conferences, or caucuses of individual local legislators similar in nature to those engaged in by state legislators where no actions are taken or decisions reached concerning matters pending before such local agencies; and

''Whereas, Local legislators like state legislators, have a duty to discuss and deliberate freely concerning their common governmental interests and problems with their constituents, with other public officials, with other local legislators, and the time, place, participants and subject matter of such discussions must remain a matter of individual legislative discretion;''

And resolves: ''[T]hat the legislative bodies of local agencies be, and they are hereby, commended for their devotion to the public which they serve and for the sound legislative discretion which they have demonstrated by their conduct in reconciling the interest of the public in observing the conduct of their public affairs with their own duty and practical necessity of keeping informed concerning the administration of their local agencies, and the attitudes, interests and activities of their constituents and other public officials.''

In the Assembly, on the other hand, a resolution (No. 99) was offered which deplored evasions of the Act and directed that the subject of violation of this law and the necessity for further legislation be assigned to an appropriate interim committee for study and report to the 1961 session of the legislature. The resolution was read and referred to the Committee on Rules.

their planning director or with informed individuals having special qualifications to speak upon municipal problems.

The Brown Act specifically refers to regular meetings (§ 54954), adjourned meetings (§ 54955) and special meetings (§ 54956). The attorney general ruled in 32 Ops. Cal. Atty. Gen. 240, 242, that under section 54953 "only meetings of the legislative body of a local agency are required to be open and public." He further held that the law "does not apply to special committees or subcommittees of local agencies where such committees consist of less than a quorum of the members of the legislative body that have created them." (P. 240.) At page 241 it is said: "Local agencies may and do perform much of their work through committees. Public agencies usually have a number of standing committees and frequently appoint special committees to investigate and report concerning specific matters. Such committees are mere instrumentalities of the governing agency and their determinations are *not* the determinations of the agency. The agency may not delegate its powers to a committee. Only when and if the agency ratifies and approves the act of one of its committees does it become the act of the agency." At 242: "Ordinarily, a committee is composed of less than a quorum of the legislative body that has created it. In those cases the findings of such a committee have not been deliberated upon by a quorum of the legislative body and the necessity, as well as opportunity, for full public deliberation by the legislative body still remains. Thus the public's rights under the secret meeting law are protected. Therefore, meetings of committees of local agencies where such committees consist of less than a quorum of the members of the legislative body are not covered by the act." Of course, the Culver City planning commission is in no sense legislative, but purely advisory. (*Cf. Hopkins* v. *MacCulloch*, 35 Cal.App.2d 442, 450 [95 P.2d 950].)

It should be noted that section 54952, in defining "legislative body" includes in that term "the governing board, commission, directors or body of a local agency," all of which terms are modified by the word "governing" and correspond to a city council in cities having other types of local government. The following phrase "or any board or commission thereof," fairly construed, means any "board or commission" of the governing body (whatever its name) and not a subordinate agency such as a zoning commission created by city charter, acting independently of the governing body

and pursuant to authority flowing directly from the charter. Counsel agree that an Assembly Bill, 2181,[3] extending the definition to include "or advisory committee thereof" failed of passage. Counsel for respondents observes that "[t]he sound reason for not including such Commissions is that they are only advisory, have no legislative powers and whatever they do may be completely disregarded or overruled by the governing body."

■ Of course the various sections of the code are to be construed so as to harmonize with each other if reasonably possible (45 Cal.Jur.2d, § 118, p. 627). Section 65543, Government Code (a part of the State Planning Act), says: "Each planning commission or planning department shall consult and advise with public officials and agencies, public utility companies, civic, educational, professional and other organizations, and citizens generally with relation to carrying out of the master or general plans." It seems logical to hold, therefore, that section 54953 (Brown Act) contemplates and does not forbid such informal development of facts pertinent to zoning problems.

The Florida Supreme Court, in *Turk* v. *Richard,* 47 So.2d 543, had to construe a statute providing: " 'All meetings of any city or town council or board of aldermen of any city or town in the State of Florida, shall be held open to the public of any such city or town . . .

" 'Any city or town councilman, or member of any board of aldermen, . . . who shall violate the provisions of this section, shall, upon conviction, be fined not more than one hundred dollars, or be imprisoned not more than two months.' " On the same page (543) the court said: "The real question in the case is, what did the legislature mean by the words 'all meetings' when it enacted the statute requiring that all meetings of any city or town council should be held open to the public of any such city or town?" At page 544: "The governing body of a municipality can act validly only when it sits as a *joint* body at an authorized meeting duly assembled pursuant to such notice as may be required by law; for the existence of the council is *as a board of entity* and the members of the council can do no valid act except as an integral body. As stated by one of the text-

---

[3]Assembly Bill 2181: "Section 1. Section 54952 of the Government Code is amended to read:

"54952. As used in this chapter, 'legislative body' means the governing board, commission, directors or body of a local agency, or any board, commission, committee, or advisory committee thereof."

writers, 'the general legal rule is that, to bind the municipality, the council or legislative body must be duly assembled and act in the mode prescribed by the law of its creation, evidenced by an order entered of record, and such act, if legislative in character, must ordinarily be by ordinance, by-law or resolution, or something equivalent thereto.' McQuillin Municipal Corporation, 2d Ed., Vol. 2, § 602, p. 529. . . . Unless, therefore, the members of the council formally come together, in the manner required by law, for the purpose of joint discussion, decision and action with respect to municipal affairs there can be no 'meeting' of this governing body, within the legally accepted sense of the term, for the individual or separate acts of a member or the unofficial agreements of all or a part of the members of the council are ineffectual and without binding force; joint, official deliberation and action as provided by law being essential to give validity to the acts of the council. [Citations.]

"The rule being plain as to what is necessary to constitute a 'meeting' under the law pertaining to municipal corporations, it must be assumed that when the legislature of the state enacted a statute providing that 'all meetings of any city or town council . . . of any city or town . . . shall be held open to the public of any such city or town . . .' it had knowledge of the general law pertaining to municipal corporations and intended the term 'all meetings' to have reference only to such formal assemblages of the council sitting as a joint deliberative body as were required or authorized by law to be held for the transaction of official municipal business; for at no other type of gathering, whether attended by all or only some of the members of the city council, could any formal action be taken or agreement be made that could officially bind the municipal corporation, or the individual members of the council, and hence such a gathering would not constitute a 'meeting' of the council."

Cases cited by appellants are not persuasive to the contrary. Some of them hold that an amendment to a zoning law made without complying with specifically prescribed procedure for amendment is invalid. Examples: *De Latour* v. *Morrison*, 213 La. 292 [34 So.2d 783] ; *Kline* v. *City of Harrisburg*, 362 Pa. 438 [68 A.2d 182] ; *Traders Develop. Corp.* v. *Zoning Board of Appeals*, 20 Ill.App.2d 383 [156 N.E.2d 274] ; *Lauterbach* v. *City of Centralia*, 49 Wn. 550 [304 P.2d 656] ; *State* v. *Village of Wickliffe*, —— Ohio App. —— [80 N.E.2d 200] ; *Armourdale State Bank* v. *City of Kansas City*, 131 Kan.

774

419 [292 P. 745]; *State* v. *Arnold,* 138 Ohio St. 259 [34 N.E.2d 777]. Others (such as *Mills* v. *Town Plan & Zoning Com'n of Town of Windsor,* 145 Conn. 237 [140 A.2d 871]; *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493 [134 A.2d 250]; *Low* v. *Town of Madison,* 135 Conn. 1 [60 A.2d 774]), involved no statute comparable to the Brown Act and turned upon facts peculiar to themselves. Another group condemn change of zoning upon particular properties without giving notice or holding a hearing as prescribed by governing law (*e.g., Berkeley Crematory, Inc.* v. *City of El Cerrito,* 146 Cal. App.2d 265 [303 P.2d 769]; *Wippler* v. *Hohn,* 341 Mo. 780 [110 S.W.2d 409]; *Tonroy* v. *City of Lubbock* (Tex.Civ.App.), 242 S.W.2d 816; *Makrauer* v. *Board of Adjustment of City of Tulsa,* 200 Okla. 285 [193 P.2d 291]; *Ford* v. *City of Hutchinson,* 140 Kan. 307 [37 P.2d 39]).

We think *Turk* v. *Richard, supra,* 47 So.2d 543, correctly reflects the spirit of our Brown Act and we conclude that the dinner gathering of June 13, 1958, did not violate the statute, even upon the assumption that that law did apply to charter cities at the time in question.

But if the contrary were true it would not follow that the action of the zoning commission (much less that of the city council) in granting a conditional zone change was invalidated by the commission's violation of the act.

It provides no penalty for infraction and no method of enforcement. Ordinarily this implies absence of intent to make the statute mandatory, existence of intent to leave it in the discretionary class. "The requirements of a statute are directory, not mandatory, unless means be provided for its enforcement." (*Gowanlock* v. *Turner,* 42 Cal.2d 296, 301 [267 P.2d 310].) See also *Whitley* v. *Superior Court,* 18 Cal.2d 75, 80 [113 P.2d 449]; *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511, 522, 524 [332 P.2d 324]; *Jefferson Union Sch. Dist.* v. *City Council,* 129 Cal.App.2d 264, 266 [277 P.2d 104]. Of course, violation of a directory statute does not result in invalidity of the action so taken (see 82 C.J.S., § 374, p. 869).

However, in view of the public purpose of the Brown Act, which is directed toward the conduct of public officials, we believe that section 1222, Government Code, and section 177, Penal Code, are here applicable and give mandatory complexion to the act. Government Code, section 1222: "Every willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or em-

ployment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor.'' Penal Code, section 177: ''When an act or omission is declared by a statute to be a public offense, and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor.''

This is one of those instances in which the prescribed penalty for violation of the law precludes all others (*cf. John E. Rosasco Creameries* v. *Cohen*, 276 N.Y. 274 [11 N.E.2d 908, 909, 118 A.L.R. 641]; *Luchini* v. *Roux*, 29 Cal.App. 755, 759 [157 P. 554]; *Marconi W.T. Co.* v. *North P.S. Co.*, 36 Cal.App. 653, 658-659 [173 P. 103]; *Vick* v. *Patterson*, 158 Cal.App.2d 414, 417 [322 P.2d 548]; *In re Peterson's Estate*, 230 Minn. 478 [42 N.W.2d 59, 63]; 55 A.L.R.2d annotation at 487), and leaves private persons, though taxpayers, without any right to declaratory relief or injunction incidental thereto. (*Oppenheimer* v. *Clifton's Brookdale, Inc.*, 98 Cal.App.2d 403, 404-405 [220 P.2d 422]; *Triangle Ranch, Inc.* v. *Union Oil Co.*, 135 Cal.App.2d 428, 434-437 [287 P.2d 537].)

 Specifically we hold that the dinner gathering of June 13, 1958, was not a meeting within the purview of the Brown Act, and that the two public hearings held after filing of Blanco's application for zone change fully complied with the act, assuming it to govern meetings of a charter city.

 Moreover, we hold that the June 13th affair could not, if unlawful, infect the proceedings of the city council in granting the application upon conditions substantially different from those recommended by the planning commission which is strictly an advisory body. The council itself fully complied with the terms of the act (assuming it applicable); it does not appear that its members had any knowledge whatever of the June 13th dinner; and the ordinance it passed is not infected with any illegality growing out of the alleged violation of the statute.

 Appellants next argue that the ordinance granting the Blanco application conditionally (No. CS-346) is invalid because the report of the planning commission was in effect rejected by less than four members of the city council,— three members voting ''aye'' and two voting ''no.'' This action was taken on October 6, 1958. Prior to November 12, 1957, section 16.10 of the basic zoning ordinance provided: ''The recommendation of the Planning Commission shall be approved unless reversed by a vote of not less than four (4) members of the City Council.'' But it was amended on that

date by repealing the quoted portion of the section and substituting section 16.101 for it. Presumably this amendment was prompted by recognition of inconsistency between section 16.10 of the ordinance and section 510 of the charter, quoted *infra*. The pertinent portion of section 16.101 is: "The recommendation of the Planning Commission shall be approved unless reversed by the City Council." (Ord. No. CS-310.) Counsel agree that this permits reversal by three members, a simple majority of the board.

Appellants' attack centers upon the proposition that "section 16.101 of Ordinance CS-147 is unconstitutional in that section 16.101 was adopted without a prior public hearing and therefore violates due process of law.[4] . . . It is appellants' contention that an amendment to a comprehensive zoning ordinance must be made in the same manner as the original basic ordinance was adopted. Respondents have stipulated that the amendment to the ordinance was adopted without prior notice of the hearing thereon by either publication or otherwise to the citizens of the City." The basic ordinance specifies no procedure for its amendment and the charter provides in section 510 customary procedure of a second reading of a proposed ordinance after the lapse of five days and forbids its enactment prior to that time; it further says: "The affirmative votes of at least three members of the City Council shall be required for the introduction or enactment of any ordinance or resolution, or for the making or approving of any order for the payment of money." Section 512 requires the clerk to cause each ordinance to be published at least once in the official newspaper within 15 days after its adoption, which requirement seems to be, as counsel for respondent suggests, an invitation to dissatisfied persons to initiate a referendum procedure under section 1303 (*cf. Johnston* v. *City of Claremont,* 49 Cal.2d 826, 837 [323 P.2d 71]; *Dwyer* v. *City Council,* 200 Cal. 505 [253 P. 932]). Whatever may be held ultimately as to the pertinence of the Brown Act to meetings of charter city agencies, it is firmly established that the mode and manner of passing ordinances is a municipal affair (see authorities cited in footnote 1, *supra*), and that there can be no implied limitations upon charter powers con-

---

[4]Zoning laws are an exercise of the police power (*Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990]; *City of Los Angeles* v. *Gage*, 127 Cal.App.2d 442, 450 [274 P.2d 34]). It is equally clear that the due process clause "guarantees no particular form of procedure" (*American Toll Bridge Co.* v. *Railroad Com.*, 12 Cal.2d 184, 207, 208 [83 P.2d 1]).

cerning municipal affairs. (*City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, 599 [212 P.2d 894].) Specifically it was held in *Brougher* v. *Board of Public Works, supra,* 205 Cal. 426, that the zoning act of 1917 could not apply to the City and County of San Francisco because it operates under a municipal charter. At page 438: "*In re Pfahler, supra,* [150 Cal. 71 (88 P. 270, 11 Ann.Cas. 911, 11 L.R.A. N.S. 1092)] this court, at page 82 of the opinion, affirms this doctrine in the following language: 'Our Constitution declares that when a freeholders' charter is finally approved by the legislature it "shall become the organic law of the city" (art. XI, § 8), and such a charter has elsewhere been aptly termed the local constitution of the city. As such, provisions as to the distribution of the governmental functions, and the manner of their exercise, obtain, so far as the same are consistent with the Constitution of the state. It has already been held by this court that the manner of enacting municipal ordinances and resolutions is unquestionably a municipal affair (*Morton* v. *Broderick,* 118 Cal. 474, 487 [50 P. 644]), and, therefore, under section 6 of article XI of the Constitution, as amended in 1896, the provisions of a city charter in regard thereto are paramount to general laws of the state.' " At page 439: "The pleadings show not only that the charter of the city of San Francisco has prescribed the mode and manner of enacting ordinances in said municipality, but that the board of supervisors in the adoption of said Ordinance No. 7519 (New Series) complied with all these requirements of said charter in reference to the passage and enactment of ordinances. Its legality, therefore, cannot be successfully assailed upon the ground that in its adoption the board of supervisors failed to observe the requirements of the 'Enabling Act of 1917,' as said act, in so far as it prescribes the steps necessary to be taken by a legislative body of a municipality in the enactment of a zoning ordinance, has no application to the City and County of San Francisco." Accord: *Brougher* v. *Board of Public Works, supra,* 107 Cal.App. 15, 24; *Lima* v. *Woodruff,* 107 Cal.App. 285, 287 [290 P. 480] ; 55 Cal.Jur.2d, § 6, page 515. ■■■ It thus appears that charter section 510, which does not require a public hearing upon an amendment to a zoning ordinance is controlling, and that section 16.08 et seq. of the basic ordinance requiring notice and public hearing upon an application for a variance or change of zone extends no further and does not apply to changes in the administra-

tive procedure of the basic ordinance, which are legislative and not administrative in their character. (See *Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 835; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614 [213 P.2d 492]; *Blotter* v. *Farrell,* 42 Cal.2d 804, 811 [270 P.2d 481].)

Moreover, charter section 401 provides: "The City shall have the power and may act pursuant to procedure established by any law of the State, unless a different procedure is established by ordinance." Section 65807, Government Code: "Except as otherwise provided in this article any amendment to a zoning ordinance may be initiated and adopted as other ordinances are initiated and adopted." The exceptions therein mentioned relate to such things as those enumerated in sections 65804 and 65800, Government Code.[5]

 Next it is contended by appellants that the basic ordinance is invalid because it does not prescribe a method for amending its own provisions. The following language of *Blotter* v. *Farrell, supra,* 42 Cal.2d 804, at page 811, seems to be dispositive of this point: "Frequently a municipal corporation is given the express power by charter or statute to make, repeal or amend ordinances; however, such is not necessary since 'it is the general rule that power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them. It is patently obvious that the effectiveness of any legislative body would be entirely destroyed if the power to amend or repeal its legislative acts were taken away from it. . . . The power of repeal extends, generally speaking, to all ordinances. Indeed, a municipal corporation cannot abridge its own legislative powers by the passage of irrevocable

---

[5]Section 65804 relates to "an amendment to a zoning ordinance which amendment changes any property from one zone to another or imposes any regulation listed in Section 65800 not theretofore imposed or removes or modifies any such regulation theretofore imposed."

Section 65800 is as follows: "Pursuant to the provisions of this chapter, the legislative body of any county or city by ordinance may:

"(a) Regulate the use of buildings, structures, and land as between agriculture, industry, business, residence and other purposes.

"(b) Regulate location, height, bulk, number of stories, and size of buildings and structures; the sizes of yards, courts and other open spaces; the percentage of a lot which may be occupied by a building or structure.

"(c) Establish and maintain building setback lines along any street, highway, freeway, road, or alley.

"(d) Create civic districts around civic centers, public parks, and public buildings and grounds for the purpose of enabling a planning commission to review all plans for buildings or structures within the district prior to the issuance of a building permit in order to assure an orderly development in the vicinity of such public sites and buildings."

ordinances. . . . Accordingly, in the absence of a valid provision to the contrary, a municipal council or assembly, having the power to legislate on, or exercise discretionary or regulatory authority over, any given subject may exercise that power at will by enacting or repealing an ordinance in relation to the subject.' (McQuillin, Municipal Corporations, 3d ed., vol. 6, § 21.10.) Thus it would appear that the power to legislate generally includes, by necessary implication, the power to amend or repeal existing legislation.'' See also, *Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 835; *City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442, 452 [274 P.2d 34].

We think it plain that no expressed reservation of power to amend a given ordinance, be it zoning or other type, is essential to the existence of that power. This attack upon the basic zoning ordinance proves sterile.

Other questions discussed by counsel are numerous but they require no separate discussion.

Judgment affirmed.

Fox, P. J., and Richards, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 16, 1960.

---

*Assigned by Chairman of Judicial Council.